## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAYMOND MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:09-cv-01762 (MRK) |
| v. | ) | |
| | ) | |
| CITIMORTGAGE, INC. | ) | |
| Defendant. | ) | MARCH 17, 2010 |

## DEFENDANT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS

Pursuant to *D. Conn. L. Civ. R.* 7, the defendant and counterclaim plaintiff CitiMortgage, Inc. ("CitiMortgage"), through its undersigned counsel, hereby submits this memorandum of law in opposition to plaintiff and counterclaim defendant Raymond McLaughlin's ("Plaintiff") Motion to Dismiss Defendant's Counterclaim For Foreclosure, dated February 24, 2010 (the "*Motion*").

## INTRODUCTION

In Plaintiff's Memorandum Of Law In Support Of Motion to Dismiss Defendant's Counterclaim For Foreclosure (the "*Memorandum*"), Plaintiff claims that this Court lacks subject matter jurisdiction over CitiMortgage's foreclosure counterclaim against Plaintiff (the "*Counterclaim*"). Plaintiff does not, however, provide any facts showing that this Court lacks such jurisdiction. Instead, Plaintiff contests the veracity of the allegations made by CitiMortgage in the *Counterclaim*. Such arguments are irrelevant to the determination of whether this Court has subject matter jurisdiction, and Plaintiff did not and cannot argue that the *Counterclaim* is not a compulsory counterclaim over which the Court has ancillary jurisdiction. Therefore, Plaintiff's *Motion* should be denied.

## ORAL ARGUMENT NOT REQUESTED

HFD 209076.2

## STATEMENT OF FACTS

Plaintiff commenced this action by filing a complaint on or about October 30, 2009. Plaintiff filed an amended complaint (the "*Complaint*") on or about February 24, 2010. [Docket Entry (hereinafter "D.E.") 67, Attachment #1]  The *Complaint* purports to assert a myriad of claims against CitiMortgage, including claims for violation of the *Racketeer Influenced and Corrupt Organizations Act* ("*RICO*") and the *Truth In Lending Act* ("*TILA*") as well as common law fraud and defamation claims.  *See generally Complaint*.  Plaintiff's claims against CitiMortgage arise from an alleged mortgage contract between Plaintiff and his wife Nicole McLaughlin and Residential Finance Corporation ("Residential"). *Id.*, ¶¶ 9-25.  Plaintiff alleges that CitiMortgage, as successor to Residential's interest in the loan and mortgage, claims to be owed a debt by Plaintiff in relation to the mortgage. *Id.*, ¶ 13.  Plaintiff claims that the mortgage and promissory note purportedly executed by him and Nicole McLaughlin were "revoked, cancelled and rescinded" in August 2009. *Id.*, ¶ 18.

On January 27, 2010, CitiMortgage answered the original complaint and filed the *Counterclaim*. [D.E. 39]  The gravamen of the *Counterclaim* is that the mortgage was validly executed by Plaintiff and Nicole McLaughlin and is enforceable against them.  Further, the *Counterclaim* alleges Plaintiff and Nicole McLaughlin have defaulted on their obligations under the mortgage and that CitiMortgage has exercised its right to declare the entire balance due in addition to foreclosing the mortgage.  *Id.*, Count Two, ¶¶ 2-16.  In the *Counterclaim*, CitiMortgage alleges that the Court has jurisdiction over its claims against Plaintiff pursuant to *Fed. R. Civ. P.* 13(a) and 28 U.S.C. § 1367. *Id.*, ¶ 1.

HFD 209076.2

<u>**ARGUMENT**</u>

**I.     Legal Standard.**

      The purpose of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King,* 467 U.S. 69, 73 (1984).

      "A claim is properly dismissed for lack of subject matter jurisdiction under *Fed. R. Civ. P.* 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim." *Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, 2010 WL 174078, at *3 (D. Conn. 2010) (attached hereto as **Exhibit A**), citing *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182 (2d Cir. 1996). "On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction 'bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" *Id.*, quoting *Aurechione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). The jurisdictional inquiry depends entirely upon the allegations of the complaint. *Carlson v. Principal Financial Group*, 320 F.3d 301, 306 (2d Cir. 2003).

**II.     This Court Has Subject Matter Jurisdiction Over CitiMortgage's Foreclosure Claim.**

      Pursuant to *Fed. R. Civ. P.* 13(a) a court has jurisdiction over any counterclaim that "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." The rule requires that a defendant assert any claim that arises out of the same transaction that is the subject of the complaint in the same action. *Id.* Counterclaims need not have an

independent basis for subject matter jurisdiction because the Court has ancillary jurisdiction over such claims. *Czepiel v. Chemical Bank*, 764 F. Supp. 255, 258 (D. Conn. 1991).

Here, the Court has ancillary jurisdiction over CitiMortgage's foreclosure claim because it is a compulsory counterclaim. The crux of Plaintiff's claims against CitiMortgage is that Residential (CitiMortgage's predecessor-in-interest to the mortgage) defrauded Plaintiff into executing a mortgage and, therefore, the mortgage is invalid. *See, e.g., Complaint*, ¶¶ 9, 13. Further, Plaintiff claims that he revoked the mortgage in August 2009. *Id.*, ¶18. On the other hand, CitiMortgage contends that the mortgage is valid and enforceable and that Plaintiff, along with co-borrower Nicole McLaughlin[1] are in default of their obligations thereunder. *Counterclaim*, Count Two, ¶ 6, 9, 10. Thus, CitiMortgage's foreclosure counterclaim regarding the mortgage arises directly out of the same transaction that is the subject of Plaintiff's claim(s). Therefore, it is a compulsory counterclaim over which this Court has jurisdiction. *See Fed. R. Civ. P.* 12(b)(6); *see also* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Nothing in Plaintiff's *Memorandum* attacks this Court's jurisdiction. Rather, Plaintiff contests the veracity of CitiMortgage's allegations regarding the execution, validity and enforceability of the mortgage. *See Memorandum*, 5-14. Such arguments are irrelevant in determining whether there is subject matter jurisdiction because the Court must accept all

---

[1] On or about March 5, 2010, CitiMortgage filed a motion to join Nicole McLaughlin to this action because she is a necessary party to this action, including the *Counterclaim*, by virtue of being a co-signor on the mortgage and other loan documents at issue in the case *sub judice*.

HFD 209076.2

well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.[2] *Hishon*, 467 U.S. at 73. Accordingly, CitiMortgage's allegations regarding the validity of the mortgage and the enforceability thereof must be accepted as true by the Court for purposes of deciding Plaintiff's *Motion. Id.*

Plaintiff also argues that CitiMortgage's foreclosure counterclaim is hearsay because it is not a verified sworn complaint. *Memorandum*, 10-11. This argument is incorrect for two reasons. First, CitiMortgage's *Counterclaim* is a pleading, not an out of court statement offered to prove the truth of the matter therein, i.e., hearsay. Second, the *Counterclaim* was submitted in compliance with *Fed. R. Civ. P.* 11(a) because it is a pleading signed by CitiMortgage's attorney. By signing the *Counterclaim*, the undersigned verified, *inter alia*, that the information contained therein is accurate to the best of his knowledge, information and belief. *See id.*, 11(b).

## CONCLUSION

CitiMortgage has properly asserted a compulsory counterclaim against Plaintiff that arises from the same transaction that is the subject of his claims. Therefore, Plaintiff's motion to dismiss for lack of subject matter jurisdiction should be denied.

---

[2] If the Court construes Plaintiff's *Memorandum* to assert that CitiMortgage failed to state a foreclosure claim, such argument likewise fails because Plaintiff cannot attack the veracity of CitiMortgage's allegations in a motion to dismiss. *Hishon*, 467 U.S. at 73. CitiMortgage's foreclosure counterclaim sets forth a *prima facie* claim for foreclosure. *See Counterclaim*, Count Two, ¶¶ 2-16. Therefore, any argument that CitiMortgage failed to state a claim because its allegations are untrue is not a valid defense pursuant to *Fed. R. Civ. P.* 12(b)(6). *See Hishon*, 467 U.S. at 73.

HFD 209076.2

Respectfully submitted,

**DEFENDANT and COUNTERCLAIM
PLAINTIFF CITIMORTGAGE, INC.**

By: _____

William E. Murray (ct19717)
Michael T. Grant (ct27968)
Edwards Angell Palmer & Dodge LLP
20 Church Street, 20th Floor
Hartford, CT 06103
Tel:  (860) 860-525-5065
Fax: (860) 527-4198
Email: wmurray@eapdlaw.com
Email: mgrant@eapdlaw.com

- 6 -

HFD 209076.2

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2010, the foregoing was mailed, postage prepaid first class mail to the following:

Raymond McLaughlin
36 Heather Drive
East Hartford, CT 06118

_____
Michael T. Grant (ct27968)

HFD 209076.2

# EXHIBIT A



Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
BOEHRINGER INGELHEIM VETMEDICA,
INC., Plaintiff,
v.
MERIAL, LTD., and Protein Sciences Corporation,
Defendants.
Civ. No. 3:09CV212 (AWT).

Jan. 14, 2010.

Andy H. Chan, April E. Abele, Christl M.N. Denecke, Erica D. Wilson, Gerald P. Dodson, Josephine Liu, Steven D. Tang, Goodwin Procter LLP, Menlo Park, CA, Diane Woodfield Whitney, Pullman & Comley, Hartford, CT, James T. Shearin, Pullman & Comley, Bridgeport, CT, for Plaintiff.

Edgar H. Haug, Gina M. Bassi, Thomas J. Kowalski, Frommer Lawrence & Haug Llp, New York, NY, Edward R. Scofield, Edward R. Scofield, Zeldes, Needle & Cooper, Bridgeport, CT, Edward D. Tolley, Cook, Noell, Tolley & Bates LLP, Athens, GA, Judy Jarecki-Black, Merial Limited, Duluth, GA, for Defendants.

*RULING ON DEFENDANTS' MOTIONS TO DISMISS*

ALVIN W. THOMPSON, District Judge.

**\*1** Boehringer Ingelheim Vetmedica ("BIV") brings this action for declaratory judgment against Merial Limited ("Merial") and Protein Sciences Corporation ("PSC"). PSC has moved to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Merial has moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) and the first-to-file rule, or in the alternat-

ive to transfer the action to the Middle District of Georgia pursuant to 28 U.S.C. § 1404(a), notwithstanding a forum selection clause relied on by BIV. If it is denied that relief, Merial seeks to dismiss Count III of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons set forth below, PSC's motion to dismiss is being granted, Merial's motion to dismiss or transfer this action is being denied, and Merial's motion to dismiss Count III of the complaint is being granted, but with leave for BIV to replead.

**I. FACTUAL BACKGROUND**

On December 3, 2001, PSC and BIV entered into a certain Research and License Agreement (Swine Influenza Vaccine) pertaining to the development and commercialization of swine influenza vaccines (the "2001 License Agreement") whereby PSC, the owner of U.S. Patent No. 6,224,882 (the "'882 Patent"), granted to BIV a license with respect to a group of PSC's patents, including the '882 Patent.

On September 1, 2004, PSC and BIV entered into a License Agreement-Non-Exclusive (the "2004 License Agreement"). The 2004 License Agreement pertained to BIV's research and development directed at products "to be used for the continuation and maintenance of health in animals, including, without limitation, vaccines for the prevention of disease in swine caused by Circo virus, with the exception of products related to swine influenza virus." First Amended Complaint for Declaratory Judgment (Doc. No. 33) ("First Amd. Compl."), Ex. A at 1.

In Section 2.1 of the 2004 License Agreement, PSC, the owner of U .S. Patent 6,103,526 (the "'526 Patent") granted to BIV a nonexclusive license with respect to the '526 Patent. In addition, Section 2.2 of the 2004 License Agreement provides:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

LICENSOR is not granting–either expressly or by implication–any licenses under any other patents or technology owned or licensed by LICENSOR, including without limitation U.S. Patents Nos. 5,976,552, 6, 245, 532, 5, 858, 368, 5, 762, 939, and 6, 224, 882, except to the extent that LICENSEE *requires* such licenses from LICENSOR or LICENSOR's Affiliates to enable LICENSEE to practice the license granted to it under Section 2.1 hereof, in which case such additional rights shall be considered licensed to LICENSEE hereunder without any modification of the terms hereof.

First Amd. Compl., Ex. A at 2 (emphasis added). The 2004 License Agreement contains, in Section 13, the following choice of law provision and forum selection clause:

*2 Any disputes, controversies or claims which arise under, out of, in connection with, or relating to this Agreement shall be governed by and interpreted in accordance with the laws of the State of Connecticut, without regard to choice of law, and the parties agree that all disputes, controversies or claims which arise under, out of, in *connection with,* or *relating to* this Agreement shall be brought in the Courts situated in the State of Connecticut for the resolution thereof, and the parties therefore submit to the exclusion jurisdiction of the State and Federal Courts situated in the State of Connecticut for resolution of all disputes, controversies or claims which arise under, out of, in connection with, or relating to, this Agreement.

First Amd. Compl., Ex. A at 6 (emphasis added).

On October 30, 2008, PSC assigned the '882 Patent to Merial pursuant to a Patent Assignment: Protein Sciences Corporation to Merial (the "'882 Assignment"). The '882 Assignment states in relevant part:

Assignor hereby assigns and transfers unto Assignee and its successors and assigns, the entire right, title and interest, in, to and under: the patents and patent applications set out in Exhibit A and the inventions and discoveries thereof ...; and [a]ny

and all rights of enforcement with respect to the Patents, including all rights to sue and recover for past, present and future infringement thereof, and any and all causes of action, in law, equity or otherwise related thereto.... Assignor thus hereby authorizes the Assignee to file, prosecute, defend, enforce, and maintain Patents, at Assignee's sole discretion ... in the name of Assignee.... Authorizes and requests the Commissioner of Patents and Trademarks of the United States of America and the empowered officials of all other patent offices and governments to issue or transfer the Patents to Assignee, as assignee of the entire right, title and interest therein.

First Amd. Compl., Ex. E at 1. On its face, the '882 Assignment makes no reference to any rights to the '882 Patent being retained by PSC. Nor does the '882 Assignment reference the existence of the 2001 License Agreement or the 2004 License Agreement. Paragraph 4 of the '882 Assignment states:

Assignor warrants that it has not knowingly conveyed to others any right or license in, to or under the Patents, or in, to [or] under inventions or discoveries in the Patents, and that Assignor has good right and title to assign the Patents to Assignee without encumbrance.

First Amd. Compl., Ex. E at 2. However, PSC has represented to the court that there is an oral agreement between PSC and Merial in connection with a "grantback" by Merial to PSC pursuant to which PSC has the right to practice the '882 Patent to the extent necessary for purposes of the 2001 and 2004 License Agreements. *See* Transcript, Nov. 9, 2009 (Doc. No. 96) at 44-47.

On December 8, 2008, Merial brought suit against BIV in the Middle District of Georgia claiming infringement of the '882 Patent (the "Georgia Action"). The alleged infringing product is a "Porcine Circovirus Vaccine". *See Merial Ltd. v. Boehringer Ingelheim Vetmedica, Inc.,* No. 08-116 (M.D. Ga. filed Dec. 8, 2008), Compl. ¶ 5. The complaint in the Georgia Action alleges, inter alia, that:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

**\*3** The '882 Patent provides MERIAL with the right to exclude others from making, using, selling, and offering for sale veterinary vaccines containing insect cell fractions. The veterinary vaccines containing insect cell fractions of BIV, including those under the INGELVAC® CircoFLEX and Ingelvac® CircoFLEX-MycoFLEX™ Combo Pack names, are within one or more claims of the '882 Patent. *BIV is not licensed by MERIAL under the '882 Patent.*

*Id.* at ¶ 11 (emphasis added). On December 10, 2008, Merial filed a separate suit, also in the Middle District of Georgia, against Intervet, Inc. for infringement of the '882 Patent. *See Merial Ltd. v. Intervet, Inc.,* No. 08-121 (M.D. Ga. filed Dec. 10, 2008).

On February 4, 2009, BIV filed its answer in the Georgia Action, asserting as an affirmative defense a license to practice the '882 Patent under the 2004 License Agreement. BIV concurrently filed the instant action for declaratory judgment against Merial and PSC. In the complaint in the instant case, BIV seeks "a determination that [BIV] has a license under [the 2004 License] to practice the claims of ... the '882 Patent ... insofar as required to make, use, sell and/or offer to sell [BIV]'s INGELVAC® CircoFLEX® and INGELVAC® CircoFLEX-MycoFLEX Combo Pack (collectively "Vetmedica's CircoFLEX® Products)...." First Amd. Compl. ¶ 4. In the alternative, BIV seeks "a determination that the manufacture, importation, use offer for sale, and/or sale of [BIV]'s CircoFLEX® Products do not infringe any valid and enforceable claim of the ' 882 Patent ... and that the claims of the '882 Patent are invalid...." First Amd. Compl. ¶ 5. BIV also seeks "a determination that Merial lacks ownership of the '882 Patent and that Merial is barred from enforcing any rights in this patent, and/or [PSC] is the proper owner of the '882 Patent." First Amd. Compl. ¶ 6.

In July 2009, BIV and Intervet, Inc. moved pursuant to 28 U.S.C. § 1407 to centralize in the District of the District of Columbia the instant litigation, the

Georgia Action, and the following actions: *Merial Ltd. v. Intervet, Inc.,* No. 08-121, (M.D. Ga. filed Dec. 10, 2008); *Intervet, Inc., v. Merial Ltd. et* al., No. 07-559 (D.D.C. filed Mar. 20, 2007); and *Wyeth v. Intervet, Inc., et al.,* No. 9-161, (D. Del. filed Mar. 12, 2009). Their motion was denied by the Panel on Multidistrict Litigation on October 1, 2009.

## II. LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurechione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

**\*4** In deciding a Rule 12(b)(3) motion to dismiss based on improper venue, "[t]he court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits, and [w]hen an allegation is so challenged [a] court may examine facts outside the complaint to determine whether venue is proper." *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 237 (D.Conn .2001) (internal quotation marks and citations omitted). Furthermore, "[t]he court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff," who has "the burden of showing that venue in the forum is proper." *Id.* If the venue is not proper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2000). "Whether dismissal or transfer is appropriate lies within the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

sound discretion of the district court." *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) for the proposition that on a motion to dismiss, the courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). However, the plaintiff is required to plead only "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1960.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D .Conn.1990) (citing *Scheuer,* 416 U.S. at 236).

**\*5** The standards for dismissal under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) are identical. *See Lerner v.*

*Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2004).

## III. DISCUSSION

### A. PSC's Motion to Dismiss

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act "does not create an independent basis for federal jurisdiction." *Berni v. Internat'l Gourmet Restaurants of America, Inc.,* 838 F.2d 642, 648-49 (2d Cir.1988) (citing *Warner-Jenkinson Co. v. Allied Chem. Corp.,* 567 F.2d 184, 186 (2d Cir.1977)).

"A civil action for [patent] infringement may be brought by 'a patentee.' 35 U.S.C. § 281. A 'patentee' is defined by statute to include the party to whom the patent was issued and the successors in title to the patent. 35 U.S.C. § 100(d). Accordingly, a suit for infringement ordinarily must be brought by a party holding legal title to the patent." *AsymmetRx, Inc., v. Biocare Med., LLC,* 582 F.3d 1314, 1319 (Fed.Cir.2009).

[The] critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license. To determine whether an assignment of patent rights was made, we must "examine whether the agreement transferred all substantial rights" to the patents and "whether the surrounding circumstances indicated an intent to do so."

*Id.* (quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 874 (Fed.Cir.1991)). "In determining whether a grant of all substantial rights was intended, it is helpful to look at what rights have been retained by the grantor, not only what rights were granted." *Vaupel,* 944 F.2d at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

875. The Federal Circuit has defined "all substantial rights" as "those rights sufficient for the licensee or assignee to be 'deemed the effective patentee under 35 U.S.C. § 281.' " *Sicom Sys., Ltd. v. Agilent Technologies, Inc.,* 427 F.3d 971, 976 (Fed.Cir.2005) (quoting *Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1377 (Fed.Cir.2000)). Where there has been a complete transfer of the right to sue for infringement and any retained rights do not "substantially interfere with the full use of the exclusive rights under the patent," there has been an assignment. *AsymmetRx,* 582 F.3d at 1320.

PSC contends that there is no case of actual controversy because PSC lacks standing to sue on the '882 Patent as the result of the '882 Assignment. BIV claims that the '882 Assignment is void pursuant to Sections 8.5 and 16.1 of the 2001 License Agreement because BIV did not give its consent to the assignment.

**\*6** Section 8.5 of the 2001 License Agreement reads as follows:

8.5 Ownership of Intellectual Property

8.5(a) PSC shall retain exclusive ownership of all patents, patent applications, inventions, developments and improvements which (i) were its property as of or prior to the date of this Agreement, (ii) which are made part of the Licensed Patents, or (iii) which are conceived, made and developed during the Term of this Agreement solely by PSC.

8.5(b) BIV shall retain exclusive ownership of all inventions, developments and improvements which (i) were its property as of or prior to the date of this Agreement, or (ii) which are conceived, made and developed during the Term of this Agreement solely by BIV.

First Amd. Compl., Ex. D at 7. Section 16.1 of the 2001 License Agreement reads as follows:
16.1 This Agreement and the rights and duties of the Parties hereunder may not be assigned or del-egated by either Party without the prior written consent of the other Party hereto, except that a sale of the entire business interest of a Party that is related to this Agreement shall not be considered an assignment hereunder. Any attempted assignment or delegation, not expressly authorized in this *Section 16.1,* shall be null and void.

*Id.* at 14.

BIV contends that Sections 8.5(a) and 8.5(b) prohibit each party from transferring any of its own intellectual property that is within the scope of the 2001 License Agreement. Thus, BIV argues, PSC was prohibited from assigning the '882 Patent unless it obtained BIV's prior written consent in accordance with Section 16.1, and because PSC failed to do so, the '882 Assignment is void and PSC has standing to sue on the '882 Patent and is a proper party to the instant declaratory judgment action. PSC argues that the 2001 License Agreement does not limit its ability to assign the '882 Patent because Sections 8.5(a) and 8.5(b) merely safeguard each party's interest in its own intellectual property against any claim by the other party.

"It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties." *Levine v. Massey,* 232 Conn. 272, 278 (1995). "When the intention conveyed by the terms of an agreement is 'clear and unambiguous, there is no room for construction.' " *Id.* Thus,

[A]nalysis of the contract focuses on the intention of the parties as derived from the language employed.... Where the intention of the parties is clearly and unambiguously set forth, effect must be given to that intent.... Contract language is unambiguous when it has a "definite and precise meaning ... concerning which there is no reasonable basis for a difference of opinion...." The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

*Levine v. Advest, Inc.,* 244 Conn. 732, 745-46 (1998). The rules of construction were discussed by the Connecticut Supreme Court in *Barnard v. Barnard,* 214 Conn. 99 (1990):

*7 "A contract is to be construed as a whole and all relevant provisions will be considered together." "The ... In ascertaining intent, "[courts] consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." "The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." ... "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and ... the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." ... " 'A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings.' "

*Id.* at 109-110 (internal citations omitted).[FN1]

FN1. "In addition, there is under Connecticut law an established principle of contract construction that 'where the terms of a contract are equally susceptible to two different meanings, that favoring the party who did not draw up the contract will be applied.' " *Middlesex Mut. Assurance Co. v. Walsh,* 218 Conn. 681, 694 (1991). However, Section 16.7 of the 2001 License Agreement provides in relevant part: "This Agreement shall not be construed more strictly against one party than against another party merely by virtue of the fact that this Agreement may have been physically prepared by such party, or such party's counsel, it being agreed that all parties, and their respective counsel, have mutually participated in the negotiation and preparation of this Agreement." First Amd. Compl., Ex. D at 15. Thus, the principle should not be applied in interpreting the 2001 License Agreement.

The court concludes that BIV's argument as to the meaning of Section 8.5 is unpersuasive, and that the interpretation urged by PSC is the one which results from a fair and reasonable construction of the language at issue. BIV was a large international animal health company. BIV and PSC had their own businesses, independent of each other, at the time they entered into the 2001 License Agreement. Giving the language in Sections 8.5(a)(i) and 8.5(b)(i) its common, natural, and ordinary meaning, in order to reach the result urged by BIV those provisions would have to be construed as prohibiting both PSC and BIV from transferring ownership of *all* the intellectual property described in those sections which was their respective property as of or prior to the date of the 2001 License Agreement. Given that the purpose of the 2001 License Agreement was to provide for collaboration between PSC and BIV only with respect to swine influenza vaccine, such a provision would be unduly broad in scope, and thus not a reasonable construction of the language, in the absence of some indication as to how a broad restriction on disposition of the parties' respective intellectual property somehow helped serve the purposes they sought to accomplish. There is no such indication in the 2001 License. On the other hand, a provision stating that each of PSC and BIV retains, against any claims by the other, exclusive ownership of all such intellectual property it owned as of or prior to the date of the 2001 License Agreement, which is what actually results from giving the language of 8.5(a)(i) and 8.5(b)(i) its common, natural and ordinary meaning, is entirely consistent with the purposes the parties sought to accomplish, i.e. collaboration only with respect to swine influenza vaccine, and the circumstances surrounding the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

transaction.

**\*8** BIV argues, however, that because of Sections 5.1 and 5.2, Section 8.5 should be read as limited in scope to intellectual property that is within the scope of the 2001 License Agreement. Section 5.1 contains a grant by PSC to BIV of a "Research Program License", and Section 5.2 contains a grant by PSC to BIV of a "Commercialization License". Neither Section 5.1 nor 5.2 contain any reference to Section 8.5 nor any provision stating how the language in the balance of the 2001 License Agreement should be interpreted. Additionally, Section 8.5 contains no reference to any limitation on the meaning of the language used therein based on Section 5.1 or 5.2. In fact, there is no language anywhere in the 2001 License Agreement that suggests there is any limitation on the scope of Section 8.5 because of Section 5.1 or 5.2.

Moreover, such an interpretation of Section 8.5 would lead to an incongruous result with respect to Section 8.2, which relates to "Joint Inventions". Under BIV's proposed reading of Section 8.5, neither party could relinquish exclusive ownership of its specified intellectual property that it owned prior to December 3, 2001 or that resulted solely from its own efforts during the term of the 2001 License Agreement, presumably because it was important that such intellectual property, which was within the scope of the 2001 License Agreement, continue to be owned by PSC and/or BIV during the term of that agreement. Section 8.2 provides that "Joint Inventions shall be owned jointly by the Parties such that each Party shall own an undivided one-half ( 1/2 ) interest in the Joint Invention." First Amd. Compl., Ex. D at 6. Under BIV's proposed reading, Section 8.5 would place no restriction at all on the transfer by BIV of its undivided one-half interest in Joint Inventions, and no restriction on the transfer by PSC of its undivided one-half interest in Joint Inventions unless the Joint Invention were "made a part of the Licensed Patents." *Id.* at 7. Thus, under BIV's proposed reading of Section 8.5, PSC and BIV would be prohibited from trans-

ferring ownership of their specified intellectual property resulting solely from their own efforts, but they would be free in the case of Joint Inventions (which are defined as resulting from the work of at least one employee of PSC and at least one employee of BIV), to substitute a total stranger as the owner of their undivided one-half interest in the Joint Invention.

Therefore, the court concludes that the proper construction of Section 8.5 is that it safeguards each party's interest in its own intellectual property against claims by the other party to the 2001 License Agreement, and provides further that PSC retains exclusive ownership of intellectual property that is made part of the Licensed Patents. Thus, because Section 8.5(a) did not prohibit PSC from assigning the '882 Patent, the '882 Assignment could not be in violation of Section 16.1 of the 2001 License Agreement and, as a consequence, is not void.

**\*9** In addition, the court concludes that, as a result of the '882 Assignment, PSC does not have the right to bring an infringement action with respect to the '882 Patent because the '882 Patent is an assignment and not a mere license. The '882 Assignment effects a transfer of the "entire right, title and interest" and "[a]ny and all rights of enforcement with respect to the Patents, including all rights to sue and recover for past, present and future infringement thereof, and any and all causes of action...." First Amd. Compl., Ex. E at 1. The only right retained by PSC was in connection with the oral "grantback" by Merial to PSC pursuant to which PSC has the right to practice the '882 Patent to the extent necessary for purposes of the 2001 and 2004 License Agreements. Thus, there was a complete transfer of the right to sue for infringement and the retained rights do not "substantially interfere with the full use of the exclusive rights under the patent". *AsymmetRx*, 582 F.3d at 1320.

While the '882 Assignment makes no mention of the existence of the 2001 and 2004 License Agreements, an assignee of a patent takes title to the pat-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

ent subject to existing licenses. *See, e.g., L.L. Brown Paper Co. v. Hydroiloid, Inc.,* 118 F.2d 674, 677 (2d Cir.1941); *In re Cybernetic Servs., Inc.,* 252 F.3d 1039, 1052 (9th Cir.2001) ("It had long passed into the text-books that ... an assignee acquired title subject to prior licenses of which the assignee must inform himself as best he can, and at his own risk.") (citing *inter alia, Keystone Type Foundry v. Fastpress Co.,* 272 F. 242, 245 (2d Cir.1921)); *Jones v. Berger,* 58 F. 1006, 1007 (C.C.D.Md.1893) ("A subsequent assignee takes title to the patent subject to such [unrecorded] licenses, of which he must inform himself as best he can at his own risk."). Thus, BIV has no need for a declaration that the 2001 and 2004 License Agreements were not adversely affected by the '882 Assignment insofar as they pertain to the ' 882 Patent.

Consequently, there can be no case of controversy between PSC and BIV with respect to the '882 Patent because the '882 Assignment is not void under Section 16.1 of the 2001 License Agreement and the '882 Assignment is an assignment, and not a mere license, so PSC does not have the right to sue for infringement of the '882 Patent.

**B. *Merial's Motion to Dismiss or Transfer the Case***

Merial argues that, because the Georgia Action was filed before this case, this case should be transferred to the Middle District of Georgia pursuant to the first to file rule. It contends that the forum selection clause, contained in Section 13 of the 2004 License Agreement, does not apply to it, but that even if the forum selection clause does apply to it, there is not present here any "special circumstance" that warrants this court deviating from the first to file rule. BIV contends that Merial is bound by the forum selection clause and the clause requires that this case remain in Connecticut, and moreover, the forum selection clause is a "special circumstance" warranting deviation from the first to file rule.

**\*10** If the forum selection clause is applicable to

Merial, that would be a significant factor in the analysis of the issues presented here. Thus, it is helpful to address the forum selection clause before discussing the first to file rule and 28 U.S.C. § 1404(a) .

In *Phillips v. Audio Active, Ltd.,* 494 F.3d 378 (2d Cir.2007),[FN2] the court used a four part analysis in determining whether a forum selection clause was presumptively enforceable, and, if so, whether the resisting party had rebutted the presumption of enforceability:

> FN2. "In reviewing procedural issues that are not unique to patent law, [the Federal Circuit] appl[ies] the law of the regional circuit where appeals from the particular district court would normally lie...." *Vanguard Research Inc. v. Peat, Inc.,* 304 F.3d 1249, 1254 (Fed.Cir.2002).

The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. *See, e.g., D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 103 (2d Cir.2006). The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. *See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.,* 22 F.3d 51, 53 (2d Cir.1994). Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause. *See, e.g., Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1358-61 (2d Cir.1993).

If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. *See id.* at 1362-63. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bre-*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

*men v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92
S.Ct. 1907 (1972) (establishing federal standard
relating to enforcement of forum clauses applic-
able in admiralty and international transactions);
*see Bense v. Interstate Battery Sys. of Am., Inc.,*
683 F.2d 718, 721 (2d Cir.1982) (applying Bre-
men standard to contractual dispute between do-
mestic parties in non-admiralty context).

*Id.* at 383-84.

As to the first inquiry, i.e., whether the clause was
reasonably communicated to the party resisting en-
forcement, there was an oral agreement between
PSC and Merial in connection with the '882 Assign-
ment with respect to the 2004 License Agreement,
and in any event, Merial took the '882 Patent sub-
ject to the 2004 License Agreement and had the
duty to inform itself about that unrecorded license.
*See In re Cybernetic Servs., Inc.,* 252 F.3d 1039,
1052 (9th Cir.2001); *Jones v. Berger,* 58 F. 1006,
1007 (C.C.D.Md.1893), discussed above. In addi-
tion, the forum selection clause is set forth in clear
and unambiguous terms in Section 13 of the 2004
License Agreement.

As to the second step, i.e., whether the clause is
mandatory or permissive, the clause is mandatory
because it provides that disputes "shall be brought
in the Courts situated in the State of Connecticut
for the resolution thereof" and that "the parties
therefore submit to the exclusive jurisdiction of the
State and Federal Courts situated in the State of
Connecticut for resolution of all disputes, contro-
versies or claims...." *See John Boutari & Son,
Wines & Spirits, S.A. v. Attiki Imps. & Distribs.
Inc.,* 22 F.3d 51, 52-53 (2d Cir.1994)("The general
rule in cases containing forum selection clauses is
that '[w]hen only jurisdiction is specified the clause
will generally not be enforced without some further
language indicating the parties' intent to make juris-
diction exclusive'.... Of course if mandatory venue
language is employed the clause will be enforced.")
(citations omitted).

**\*11** The third step in the analysis is to determine

whether the parties and claims involved in the suit
are subject to the forum selection clause. The court
concludes that both the parties and the claims in the
instant action are subject to the forum selection
clause.

Merial contends that it is not subject to the forum
selection clause because Merial is not a signatory to
the 2004 License Agreement. However, there is
"ample support for the conclusion that the fact a
party is a non-signatory to an agreement is insuffi-
cient, standing alone, to preclude enforcement of a
forum selection clause." *Aguas Lenders Recovery
Group LLC v. Suez, S.A .,* 585 F.3d 696, 701 (2d
Cir.2009) (citations omitted). "[I]f successorship is
established, a non-signatory is subject to the *M/S
Bremen* presumption of the enforceability of man-
datory forum selection clauses." *Id.* "A forum se-
lection clause is integral to the obligations of the
overall contract, and a successor in interest should
no more be able to evade it than any other obliga-
tion under the agreement." *Id.* Thus, as the suc-
cessor in interest to PSC with respect to the '882
Patent, Merial is bound by the 2004 License Agree-
ment, including its forum selection clause.

The second aspect of the third step in the analysis
set out in *Phillips* is that the claims involved in the
suit are subject to the forum selection clause. The
question of the scope of a forum selection clause is
one of contract interpretation and "[w]hether or not
a forum selection clause applies depends on what
the *specific clause at issue* says." *Phillips,* 494 F.3d
at 389 (quoting *John Wyeth & Bro. Ltd. v. CIGNA
Intern. Corp.,* 119 F.3d 1070, 1075 (3d Cir.1997)
(emphasis in the original). "The scope of a forum
selection clause is a contractual question that re-
quires the courts to interpret the clause and, where
ambiguous, to consider the intent of the parties."
*Phillips,* 494 F.3d at 389 (quoting *New Moon Ship-
ping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d
24, 33 (2d Cir.1997)). In construing the scope of
forum selection clauses, the Second Circuit ana-
lyzes the specific language of the clause and
"discounts the precedential weight of cases that

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

deal with dissimilarly worded clauses." *Phillips,* 494 F.3d at 390. "Drawing analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue." *Wyeth,* 119 F.3d at 1075. Therefore, the court must look to the specific language of the forum selection clause in question to see whether the claims stated in BIV's complaint are within the scope of the forum selection clause.

The forum selection clause in the 2004 License Agreement applies to "all disputes, controversies or claims which arise under, out of, in connection with, or relating to, this Agreement." First Amd. Compl., Ex. A at 6. The term "related to" is "not necessarily tied to the concept of a causal connection." *Coregis Ins. Co. v. Am. Health Found., Inc.,* 241 F.3d 123, 128 (2d Cir.2001). "Webster's Dictionary defines 'related' simply as 'connected by reason of an established or discoverable relation.' " *Id.* (quoting Webster's Third New International Dictionary 1916 (1986)). "Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' *see Jackson v. Lajaunie,* 270 So.2d 859, 864 (La.1972), and synonymous with the phrases 'with respect to,' and 'with reference to,' *see Phoenix Leasing, Inc. v. Sure Broad., Inc.,* 843 F.Supp. 1379, 1388 (D.Nev.1994), aff'd, 89 F.3d 846 (9th Cir.1996)." *Coregis Ins.,* 241 F.3d at 128-29.

**\*12** The Second Circuit has distinguished the words "arise out of" from the other words in the forum selection clause here. In *Phillips,* the court noted that it did "not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." *Phillips,* 494 F.3d at 389; *see also Coregis Ins.,* 241 F.3d at 128 (noting that "the ordinary meaning of the term 'related to' as used in the Provision is broader than the term 'arising out of' ").

The instant dispute falls within the broad language of the forum selection clause here because the dis-

pute "relates to" and "arises in connection with" Sections 2.1 and 2.2 of the 2004 License Agreement. Merial contends that BIV is infringing one or more claims of the '882 Patent in the course of manufacturing and selling BIV's CircoFLEX® products. BIV alleges that is has a license under the 2004 License Agreement "to practice the claims of [the ' 882 Patent] insofar as required to make, use, sell and/or offer to sell Vetmedica's INGELVAC® CircoFLEX® and INGELVAC® CircoFLEX-MycoFLEX™ Combo Pack (collectively 'Vetmedica's CircoFLEX® Products') under Section 2. 1, and thereby does not infringe." First Amd. Compl. ¶ 4. In the alternative, BIV seeks "a determination that the manufacture, importation, use, offer for sale, and/or sale of Vetmedica's CircoFLEX® Products do not infringe any valid and enforceable claim of the '882 Patent ... and that the claims of the '882 Patent are invalid...." First Amd. Compl. ¶ 5. Because the dispute between BIV and PSC is over whether BIV "requires", within the meaning of that term in Section 2.2 of the 2004 License Agreement, a license for the '882 Patent in order to practice the license granted to it for the '526 Patent in Section 2.1 of the 2004 License Agreement, that dispute is related to and arises in connection with the 2004 License Agreement.[FN3]

> FN3. BIV also seeks a determination that PSC, not Merial, is the proper owner of the '882 Patent. This claim also relates to and arises in connection with the 2004 License Agreement because BIV needs any declaratory judgment with respect to its rights under the 2004 License Agreement to be against the proper owner of the '882 Patent .

Here, the forum selection clause was communicated to the resisting party, has mandatory force, and covers the parties and claims involved in the dispute, so it is presumptively enforceable. Thus, the final step in the analysis set out in *Phillips* is to determine whether Merial has rebutted the presumption of enforceability by making a sufficiently strong

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen,* 407 U.S. at 15.

There is no claim here that the forum selection clause is invalid because of fraud or overreaching. Merial's argument that enforcement of the forum selection clause would be unreasonable or unjust is presented only in the context of the first to file rule and the factors that a court must consider in deciding whether to transfer an action pursuant to 28 U.S.C. § 1404(a). Because there is a valid and enforceable forum selection clause, Merial's motion to dismiss for improper venue must be denied.

**\*13** "As a general rule, '[w]here there are two competing lawsuits, the first suit should have priority." *Employers Ins. of Wausau v.. Fox Entm't Group, Inc.,* 522 F.3d 271, 274-75 (2d Cir.2008) (internal citations omitted).

This rule embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum.... We have recognized only two exceptions to the first-filed rule: (1) where the "balance of convenience" favors the second-filed action, and (2) where "special circumstances" warrant giving priority to the second suit.

*Id.* at 275. (internal quotations and citations omitted).

In *Employers Ins. of Wausau,* the court observed that, "[g]iven the centrality of the balance of convenience, the 'special circumstances' in which a district court may dismiss the first-filed case without this analysis are quite rare. In fact, we have identified only a limited number of such circumstances." *Id.* at 275. The court then specified two such special circumstances:

One exists where the first-filed lawsuit is an improper anticipatory declaratory judgment ac-

tion.... Another special circumstance is where forum shopping *alone* motivated the choice of the situs for the first suit.

*Id.* at 275-76 (emphasis in original) (citations omitted). The court also concluded that "where special circumstances are not present, a balancing of the conveniences is necessary." *Id.* at 276.

Thus, while the court agrees with Merial that the presence of an enforceable forum selection clause is not a "special circumstance" warranting deviation from the first-to-file rule, that point is not dispositive of the question of the weight to be given to the forum selection clause here. Rather, a determination of which lawsuit the balance of convenience favors is necessary, and the forum selection clause comes into play into making that determination.

In *Employers Ins. of Wausau,* the court observed that:

In applying the "balance of convenience" exception, we have considered the ties between the litigation and the forum of the first-filed action.... We agree with several district courts within our Circuit that the factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a).

*Id.* at 275. (internal citations and quotations omitted).

In *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988), the Court had before it the issue of what consideration a district court should give to a forum selection clause when deciding a motion to transfer an action under § 1404(a). The Court concluded that "[t]he forum selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration...." *Stewart Org.,* 487 U.S. at 31. The Court observed that the "plaintiff's choice of forum is only one relevant factor for [the court's] consideration." *Id.* at 33 (citing *Norwood v. Kirk-*

Case 3:09-cv-01762-MRK   Document 73   Filed 03/17/10   Page 20 of 23

Page 12

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

*patrick,* 349 U.S. 29, 32 (1955)). The Court's analysis included the following language:

**\*14** Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be *a significant factor* that figures centrally in the district court's calculus. In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.... Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause....

*Stewart Org.,* 487 U.S. at 29-31 (emphasis added).

Section 1404(a) permits a district court to transfer "any civil action to any other district or division where it might have been brought" when such a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §

1404(a). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992).

In *Employers Ins. of Wausau,* the court stated that the factors considered in connection with a motion pursuant to § 1404(a) include:

(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*Employers Ins. of Wausau,* 522 F.3d at 275 (citing *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106-07 (2d Cir.2006)). Two additional factors that are customarily included in § 1404(a) analysis in this district are ones that should also be considered in the context of this case: the district court's familiarity with governing law; and trial efficiency and the interest of justice. *See Alden Corp. v. Eazypower Corp.,* 294 F.Supp.2d 233, 237 (D . Conn.2003) (citing *U.S. Surgical Corp. v. Imagyn Med. Techs., Inc.,* 25 F.Supp.2d 40, 46 (D.Conn.1998)).

**\*15** The burden of justifying a transfer under § 1404(a) is ordinarily on the moving party. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *overruled on other grounds by Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2d Cir.1990). However, here the pendency of the Georgia Action and the fact that under the first filed rule, the first suit should have priority unless an exception applies, means that BIV, even though it is the nonmoving party, should have the burden of establishing that the balance of convenience favors the second filed action. The court concludes that BIV has met that burden.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

First, as to the weight accorded the plaintiff's choice of forum, the court concludes that this factor weighs heavily against transfer because of the presence of a valid and enforceable forum selection clause, which the Supreme Court has described as a "significant factor" that should figure centrally in the court's analysis. *Stewart,* 487 U.S. at 29.

Second, as to the convenience of witnesses, almost all of the nonparty witnesses reside in or near the District of Connecticut, and the court concludes that this factor weighs heavily against transfer. There are three named inventors of the '882 Patent. Gale Smith, who formerly resided in Connecticut, now resides in Maryland. James DeBartolomeis, who formerly resided in Connecticut, now resides near Connecticut in Charlton, Massachusetts. Andrei Voznesenski, resides in Connecticut. Additionally, the place of business of the employees of PSC who participated in the prosecution of the '882 Patent was PSC's headquarters in Meriden, Connecticut. PSC's outside counsel who prosecuted the '882 Patent, Attorney Thomas Kowalski, has his principal place of business in New York City.

Third, as to the location of relevant documents and relative ease of access to sources of proof, the court concludes that this is a neutral factor. Documentary evidence as to the prosecution of the '882 Patent is likely in the possession of PSC here in Connecticut, of the named inventors (two of three of whom now reside in or near Connecticut), or of Attorney Kowalski in New York City. Also, documents and records relating to the '882 Patent from the date of Patent, i.e., May 1, 2001, to the time of the '882 Assignment in 2008 are likely in the possession of PSC here in Connecticut. On the other hand, documents related to the manufacture and development of BIV's products at issue in this case are likely located at BIV's facility in Missouri, while documents relating to the '882 Assignment and documents relating to Merial's claims are likely located in or near the Middle District of Georgia, either at its manufacturing facility in the Middle District of Georgia or at its headquarters in the Northern Dis-

trict of Georgia (which is only 50 miles from the courthouse in the Middle District of Georgia). As to documents and sources of proof with respect to alleged infringing sales and offers of sale, BIV's sales and offers for sale are nationwide.

**\*16** Fourth, as to the convenience of the parties, the court concludes that this is a neutral factor. While BIV is not headquartered in this district, as discussed below, its in-house counsel who were involved in negotiating both the 2001 License Agreement and the 2004 License Agreement are located here. On the other hand, while Merial is headquartered near the Middle District of Georgia, it will be receiving support in this litigation from PSC, which is located here.

Fifth, as to the locus of operative facts, the court concludes that this factor weighs slightly against transfer. The lawyers who negotiated the 2004 License Agreement as well as the 2001 License Agreement are in-house counsel of BIV and PSC located in Connecticut, with the exception of Attorney Kowalski who is located in New York City. The '526 Patent, which is the patent licensed to BIV under Section 2.1 of the 2004 License Agreement, was invented by five inventors; four of them resided in Connecticut at the time, and one of them resided in Millbury, Massachusetts at the time. The '526 Patent was assigned to PSC in Meriden, Connecticut. At the time the '882 Patent issued, all three inventors, Smith, DeBartolomeis, and Voznesenski, resided in Connecticut, and the patent was assigned to PSC in Meriden, Connecticut. The operative facts that relate to the time frame up to the grant of the license to practice the ' 526 Patent and as required, the '882 Patent, pursuant to the 2004 License Agreement, are significant for purposes of this lawsuit because determination of the scope of BIV's rights will require an interpretation of the 2004 License Agreement. However, once the scope of BIV's rights in connection with the 2004 License Agreement is determined, there will have to be a consideration of what activities BIV has engaged in in the production of its products that are at issue in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

this lawsuit, and the locus of operative facts with respect to those products appears to be BIV's headquarters in Missouri.

Sixth, as to the availability of process to compel unwilling witnesses, the court concludes that this factor weighs slightly against transfer. While PSC employees have agreed to cooperate with Merial in enforcing its rights under the '882 Patent, they have not entered into an agreement to cooperate with BIV. Almost all of these individuals appear to be subject to the subpoena power of the courts here in Connecticut, while none appear to be subject to subpoena in the Middle District of Georgia.

Seventh, as to the relative means of the parties, the court concludes that this is a neutral factor because BIV and Merial are both large international animal health companies.

Eighth, as to the district court's familiarity with the governing law, the court concludes that this is a neutral factor. The dispute between the parties will require an interpretation of the 2004 License Agreement which provides that it shall be governed by and interpreted in accordance with Connecticut law, but the principles of Connecticut law governing contract interpretation are straightforward, as reflected by the summary in this ruling. Other aspects of the case will require the application of federal law concerning patents, with which the courts in both districts have equal familiarity.

**\*17** Ninth, as to trial efficiency and the interest of justice, the court concludes that this factor weighs slightly in favor of transfer because of the pendency of *Merial Ltd. v. Intervet, Inc.,* No. 08-121, in the Middle District of Georgia. It appears that there will be at least some overlapping issues between Merial's dispute with Intervet and its dispute with BIV, e.g., claim construction and validity of the '882 Patent. However, a very significant aspect of the instant matter will be interpretation of the 2004 License Agreement and determination of the scope of BIV's license to use the '526 Patent and the '882 Patent thereunder, which are issues that are not

present in Merial's litigation with Intervet.

Given that the plaintiff's choice of forum and the convenience of witnesses weigh heavily against transfer, and that the locus of operative facts and the availability of process to compel unwilling witnesses weigh slightly against transfer, while the only factor that weighs in favor of transfer, trial efficiency and the interest of justice, weighs only slightly in favor of transfer, the court concludes that BIV has established that the balance of convenience favors the second filed action, i.e. the case it has filed here in the District of Connecticut.

### C. *Merial's Motion to Dismiss Count III*

Merial has moved to dismiss Count III of the complaint, the claim for declaratory judgment of invalidity of the '882 Patent, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. BIV alleges in Count III only that:

The claims of the '882 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.,* including 35 U.S.C. §§ 102, 103, and 112.

First. Amd. Compl. ¶ 42. BIV includes no factual allegations as to the basis for the alleged invalidity of the '882 Patent.

The allegations in Count III fail to provide fair notice to Merial of BIV's patent invalidity claim. The allegations are comparable to those in *Sun Valley Bronze, Inc. v. Nobilus, LLC.,* No. CV 08-345-S-EJL, 2008 WL 5234055 (D.Idaho Dec. 12, 2008) and *Bartronics, Inc. v. Power-one, Inc.,* 245 F.R.D. 532 (S.D.Ala.2007), where patent invalidity claims were dismissed pursuant to Rule 12(b)(6). In *Sun Valley Bronze,* the complaint alleged: "SVB contends that some or all of the claims of the '873 Patent are invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103 and/or 112." *Sun Valley Bronze,* 2008 WL

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 174078 (D.Conn.)
**(Cite as: 2010 WL 174078 (D.Conn.))**

5234055 at *2. In *Bartronics,* the complaint alleged: "One or more of the claims of the '057 patent are invalid under 35 U.S.C. § 103 " and that "One or more of the claims of the '057 are invalid as being indefinite under 35 U.S.C. § 112 ..." *Bartronics,* 245 F.R.D. at 537. In opposing the motion to dismiss, BIV relies on *Phonometrics, Inc. v. Hospitality Franchise Sys. Inc.,* 203 F.3d 790 (Fed.Cir.2000), but that case is inapposite because at issue there was the pleading requirements for a complaint alleging patent infringement, not patent invalidity.

**\*18** Therefore, Merial's motion to dismiss Count III is being granted, but with leave for BIV to replead.

## IV. CONCLUSION

Accordingly, PSC's motion to dismiss (Doc. No. 58) is hereby GRANTED, and Merial's motion to dismiss or transfer (Doc. No. 56) is hereby GRANTED in part and DENIED in part; the motion to dismiss or transfer the case is being denied, and the motion to dismiss Count III is being granted but with leave for BIV to replead within 21 days.

It is so ordered.

D.Conn.,2010.
Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.
Slip Copy, 2010 WL 174078 (D.Conn.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.