## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAYMOND WINTSON | : | |
| MCLAUGHLIN and | : | |
| Shakir Ra-Ade Bey, | : | |
| | : | |
| Plaintiffs, | : | NO. 3:09CV1762 (MRK) |
| | : | |
| v. | : | |
| | : | |
| CITIMORTGAGE, INC., | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OF DECISION

Defendant, CitiMortgage, Inc. ("CitiMortgage") has filed a Motion to Dismiss [doc. # 74] this case in its entirety.  For the following reasons, the motion is granted.  However, in light of Plaintiff's *pro se* status, he will be granted one last opportunity to amend his complaint to state a viable claim for relief – though the Court grants this opportunity with reluctance and some important caveats, discussed at the end of this opinion.

### I.       Introduction & Procedural History

The *pro se* Plaintiff has identified himself as Shakir Ra Ade Bey, a "Grand Sheik" and "Divine Public Minister" in the Moorish Holy Temple of Science of the World.  *See* Pl.'s Judicial Notice/Declaration of Status [doc. # 63].  According to Chief Judge Frank Easterbrook of the Seventh Circuit, "It is a tenet of Moorish Science that any adherent may adopt any title, and issue any documents, he pleases." *United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003).

Mr. Ade Bey initiated this lawsuit on October 30, 2009 with the filing of a complaint against CitiMortgage; its CEO, Mr. Sanjiv Das; and three credit reporting agencies: Equifax, Inc.; Trans Union, LLC; and Experian Information Solutions, Inc.  *See* Compl. [doc. # 1].  The original Complaint was, to put it mildly, confusing, not least of which because it was brought on

behalf of one RAYMOND WINTSON MCLAUGHLIN (always presented in all capital letters), but was signed by "Shakir Ra-Ade:Bey, *Sui Juris*, Attorney in Fact." *Id.* Among other things, the Complaint alleged that Plaintiff and one Nicole McLaughlin signed "an alleged mortgage agreement" worth $233,731 with Residential Finance Corporation ("Residential") for real estate located at 36 Heather Drive in East Hartford, Connecticut. *Id.* ¶ 12. "From said transaction," the Complaint continued, "Residential then . . . through coerce [and] fraud," "fraudulently converted" the signed "Draft" into a "[promissory] [n]ote." *Id.* ¶ 13. The original Complaint said that Residential then sold the Note "without the consent and authority of the Plaintiff" to Defendant CitiMortgage. *Id.* ¶ 14. The Complaint asserted that, as a result of Residential selling the Note, "the now demanded balance . . . of [the] alleged mortgage was paid in full," and that "no lawful debt now exists according to the principles of accounting." *Id.* ¶¶ 15-16.

According to the Complaint, Plaintiff and co-signatory Nicole McLaughlin received a statement from CitiMortgage indicating that it now held the mortgage, and that the first payment was due on May 1, 2009. *See id.* ¶ 17. That same day, Plaintiff reportedly sent Mr. Sanjiv Das, CEO of CitiMortgage, a "Request for Accounting"; the Complaint alleged that the same request was sent to CitiMortgage on July 27, 2009. *See id.* ¶¶ 18-20. The "Request for Accounting" purported to give CitiMortgage fourteen days to produce the contract signed by Plaintiff and Nicole McLaughlin. *See id.* When CitiMortgage did not respond, Plaintiff and Nicole McLaughlin purported to "revoke[], cancel[], and rescind[]" the Note by publicly recording it on the East Haven, Connecticut land records. *See id.* ¶ 22.

On or about September 1, 2009, Plaintiff and Nicole McLaughlin received notice that CitiMortgage had reported the mortgage delinquent, which Plaintiff alleges was defamatory. *See id.* ¶ 23. On or about September 10, 2009, the credit reporting agencies received an affidavit

2

from Plaintiff stating that "there were no CONTRACT with CITIMORTGAGE and or its agent(s) and that the information contained in the credit report was false and devastatingly injurious." *Id.* ¶ 24.  Equifax did not respond, *id.* ¶ 29, and Experian's credit report continued to reflect the delinquency, *id.* ¶ 28.  Trans Union conducted an investigation and concluded that the mortgage was indeed delinquent.  *See id.* ¶ 27.

The Complaint alleged that the aforementioned facts constituted, *inter alia*, a RICO conspiracy and defamation, *see id.*, and sought $100 million in money damages for the emotional and psychological injuries caused to Plaintiff and Nicole McLaughlin; the elimination of all negative information in credit reports; the release of all liens on the property and the conveyance of clear legal title to Shakir Ra Ade Bey; an order that CitiMortgage produce the Note; an order that CitiMortgage "cease and desist forever its efforts to take from the Plaintiff and Nicole McLaughlin, regarding this matter, whatsoever"; a declaration that CitiMortgage's conduct was "wrong"; and a declaration that "the conversion of a Promissory note to a cash instrument is a violation of the National Currency Act of 1863/4." *Id.* at 5-6 ¶¶ 1-10.  Interestingly, the Complaint also stated that:

> All Claims are stated in US Dollars which means that a US Dollar will be defined, as a One Ounce Silver coin of 99.999% pure silver, or the equivalent par value as established by law or the exchange rate as set by the US Mint, whichever is the higher amount, for a certified One Ounce Silver Coin (US Silver Dollar).  If the claim is to be paid in Federal Reserve Notes, Federal Reserve notes will only be accepted at Par Value as indicated above.

*Id.* ¶ 12.

Shortly after this case was filed, all of the Defendants save CitiMortgage filed motions to dismiss.  *See* Def. Das' Mot. to Dismiss [doc. # 32]; Defs. Experian & Equifax's Joint Mot. for J. on the Pleadings [doc. # 48]; Def. Trans Union's Mot. for J. on the Pleadings [doc. # 50]. CitiMortgage, for its part, asserted a counterclaim against "Raymond McLaughlin" and Nicole

McLaughlin, alleging a breach of contract and requesting a strict foreclosure of the mortgage as to 36 Heather Drive (hereinafter, "the real estate").   *See* CitiMortgage's Answer and Counterclaim [doc. # 39] at 10-13.   Plaintiff then moved to dismiss the *lis pendens* that CitiMortgage had placed on the real estate.   *See* Pl.'s Mot. to Dismiss Notice of *Lis Pendens* [doc. # 43].

In an effort to better understand Plaintiff's identity and allegations, and to resolve the outstanding motions, the Court held an in-court status conference on February 12, 2010, for which Mr. Ade Bey and counsel for Defendants appeared.   During the status conference, Mr. Ade Bey clarified that prior to a religious conversion to the Moorish Holy Temple of Science of the World, he was generally referred to as "Raymond McLaughlin."   He further explained, both in court and in numerous filings, that through his religious conversion, he knows that the name "Raymond McLaughlin" was but a "legal fiction" and/or a "transmitting utility" (although the Court is unclear as to what was being transmitted).   Plaintiff now uses his "aboriginal and indigenous free descent appellation" – Shakir Ra Ade Bey – but also purports to represent the interests of the all-capital letter "RAYMOND MCLAUGHLIN."   In fact, according to the Plaintiff, RAYMOND WINTSON MCLAUGHLIN has granted to Mr. Ade Bey a power of attorney "to conduct all tax, business, and legal affairs," *see* Pl.'s Judicial Notice/Declaration of Status [doc. # 63] Power of Attorney at 1; as well as a security interest in "all . . . interests now owned or hereafter acquired," *see id.* UCC Financing Statement.[1]   Both the Power of Attorney (which is dated April 20, 2009) and the UCC Financing Statement (which is undated) were apparently recorded on the East Haven land records.   *See id.*

---

[1] The UCC Financing Statement identifies the "MOORISH HOLY TEMPLE OF SCIENCE OF THE WORLD/FREE AND SUNDRY MOORISH SCIENCE TEMPLE" as an additional secured party.

During the status conference, the Court explained to Mr. Ade Bey that it lacked jurisdiction to discharge the *lis pendens* on the real estate, and that any such petition would have to be filed in Connecticut Superior Court.   *See* Conn. Gen. Stat. §§ 49-13(a) and 52-325a. Accordingly, Mr. Ade Bey's Motion to Dismiss Notice of *Lis Pendens* [doc. # 43] was denied, but without prejudice to him bringing an appropriate action in state court or to renewal in this court if he could establish a jurisdictional basis.  *See* Order dated Feb. 16, 2010 [doc. # 57] at 1. The Court also granted Mr. Ade Bey's request to amend his complaint.  *See id.*

Shortly after the in-court status conference, Mr. Ade Bey agreed to dismiss the claims against all of Defendants except CitiMortgage.  *See* Pl.'s Resp. [doc. # 61]; Order dated Feb. 18, 2010 [doc. # 62].   On February 19, 2010, Mr. Ade Bey filed the Civil RICO Case Statement required by the District of Connecticut's Standing Order in Civil RICO Cases.  *See* Pl.'s RICO Case Statement [doc. # 65].   On February 24, 2010, Mr. Ade Bey filed his Amended Complaint [doc. # 67-1], which the Court will discuss in a moment.  At the same time, Mr. Ade Bey filed a Motion to Dismiss Defendant's Counterclaim for Foreclosure [doc. # 67], asserting that the Court lacked subject matter jurisdiction to entertain CitiMortgage's counterclaim.  In support, Plaintiff argued that the signature on the promissory note on which the counterclaim is premised is counterfeit.   *See id.*; Pl.'s Mem. in Supp. of Mot. to Dismiss Counterclaim [doc. # 68]. CitiMortgage then moved under Rule 20 of the *Federal Rules of Civil Procedure* to join Nicole McLaughlin as an involuntary counterclaim defendant, on the grounds that she had signed both the promissory note and the mortgage.  *See* Def.'s Mot. to Join [doc. # 70].  Plaintiff opposed this motion as well, arguing once more that any signatures were counterfeit and that Nicole McLaughlin has no interest in this litigation.  *See* Pl.'s Mem. in Opp'n to Mot. to Join [doc. # 85].

In support of the latter contention, Plaintiff submitted a "Warranty Deed" dated January 3, 2010, which stated that:

> RAYMOND MCLAUGHLIN and NICOLE MCLAUGHLIN of the Town of East Hartford, County of Hartford, and State of Connecticut (hereinafter referred to as "Grantors") for the consideration of TWENTY ONE DOLLARS ($21.00) in Minted United States Silver Coins received to their full satisfaction of Shakir Ra Ade Bey of Podunk, Quinnehtukqut Territory[2] (hereinafter referred to as "Grantee") do give, grant, bargain, sell and confirm unto said Grantee, forever as owner with all rights as an indigenous natural man, the following described Indigenous Real Private Property located on the Creator's earth @ N41043.72704, W72°37.74432.
>
> The aforementioned Indigenous Real Private Property is now free from encumbrances and is now and forever exempt from levy.
>
> The Indigenous Real Private Property is now under the jurisdiction of Shakir Ra Ade Bey, a Moor; Indigenous Sovereign to the Land.

Warranty Deed, Pl.'s Mem. in Opp'n to Mot. to Join [doc. # 85] Ex. A.

Plaintiff's arguments to the contrary, the Court concluded that it had jurisdiction under 28 U.S.C. § 1367 to hear CitiMortgage's counterclaim. *See* Order dated Apr. 21, 2010 [doc. # 96]; *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 211-13 (2d Cir. 2004). Additionally, the Court rejected Plaintiff's arguments that Nicole McLaughlin has no interest in this litigation. *See id.* at 2. The Court explained that, at least at this stage, it must assume the truth of CitiMortgage's allegations, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940-41 (2009), including the assertion of fact that Ms. McLaughlin had signed the promissory note and mortgage at issue. *See* Order dated Apr. 21, 2010 [doc. # 96] at 2. The Court concluded that if CitiMortgage could effectuate service on Ms. McLaughlin, it would be entitled to join her under Rule 20. *See id.*; *Graham v. Zimmerman*, 181 Conn. 367, 372 (1980). On May 24, 2010, Nicole McLaughlin filed a motion

---

[2] Mr. Ade Bey indicates in some of his filings that "Podunk, Quinnehtukqut" refers to East Hartford, Connecticut. *See, e.g.*, Pl.'s Judicial Notice [doc. # 93] at 2. Mr. Ade Bey replicates this non-traditional spelling when he identifies himself elsewhere as a "Muurish Amaru-Khan" (as opposed to a "Moorish American"). *See* Pl.'s Obj. to Mot. to Strike [doc. # 113] at 1.

to dismiss the counterclaim asserted against her.  *See* N. McLaughlin's Mot. to Dismiss [doc. # 108].  In filing her motion to dismiss the counterclaim, Nicole McLaughlin stated that she is the "authorized representative for NICOLE J. MCLAUGHLIN," and said that she is only appearing before this Court pursuant to a "special," "restricted appearance" under Rule E(8) of the *Federal Supplemental Rules for Certain Admiralty and Maritime Claims*.[3]  *See id.* at 1.  This motion is still pending and will be addressed below.

First, however, the Court turns to Mr. Ade Bey's Amended Complaint [doc. # 67-1].  As mentioned, unlike the original complaint, the Amended Complaint is directed only at CitiMortgage, but it asserts a number of additional claims.  Construed liberally, the Amended Complaint asserts claims for a RICO conspiracy; common-law fraud, defamation; and violations of the Truth-in-Lending Act (TILA), the Securities Exchange Act of 1934, the National Bank Act of 1864, and the Uniform Commercial Code (UCC).  *See* Am. Compl. [doc. # 67-1].  As was generally true with the original complaint, Mr. Ade Bey demands $100 million dollars in damages; the elimination of all negative information CitiMortgage reported to credit reporting agencies; an order that CitiMortgage validate the debt, release all liens on the real estate, convey clear title to the real estate, and produce the "legal 'Wet-Ink' contract" and the promissory note; a declaration that CitiMortgage committed fraud and that "the conversion of the Promissory note to a cash instrument is a violation of the National Currency Act of 1864"; and an injunction that CitiMortgage "cease and desist forever its attempts to collect anything from the Plaintiffs,[4] regarding this matter, whatsoever."  *Id.* at 22.  CitiMortage argues that none of Mr. Ade Bey's

---

[3] This Rule states that a "Restricted Appearance" is "An appearance to defend against an admiralty and maritime claim with respect to which there has issued process *in rem*, or process of attachment and garnishment, [which] may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served."

[4] The use of the plural "Plaintiffs" refers to Mr. Ade Bey and RAYMOND MCLAUGHLIN.

claims states a legally-cognizable claim upon which this Court could grant relief, even assuming

that the all of the factual allegations in the Amended Complaint are true.  *See* Def.'s Mem. in

Supp. of Mot. to Dismiss [doc. # 75].  The Court agrees.

## II.    Standard of Review

When considering a motion to dismiss, the Court accepts as true all factual allegations in

the complaint and draws inferences from these allegations in the light most favorable to the

plaintiff.  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008).  This does not mean,

however, as Mr. Ade Bey seems to think, that the Court must accept as true every assertion made

in anything he files with the Court.  Indeed, Mr. Ade Bey has inundated this Court (and defense

counsel) with voluminous filings that generally purport to set forth facts related to either the

merits of his claims or his religious status.  *See, e.g.*, Pl.'s Verified Plain Statement of Truth [doc.

# 59]; Pl.'s Judicial Notice/Declaration of Status [doc. # 63]; Pl.'s Verified Affidavit of Facts by

Specific Negative Averment [doc. # 68]; Pl.'s Notice to File Evidence into Evidence File [doc.

# 83]; and Pl.'s Judicial Notice [doc. # 93].  In one such filing, Mr. Ade Bey demanded that

within 21 calendar days, CitiMortgage must either "[d]ismiss any and all claims against

RAYMOND MCLAUGHLIN with prejudice and Pay all damages as indicated by the initial

complaint," or alternatively, "prove [its] case by preponderance or the greater weight of evidence

and . . . answer each and every averment,[5] Point by Point individually."  Pl.'s Verified Affidavit

of Facts by Specific Negative Averment [doc. # 68] at 13-14.  This filing went on to warn that:

> If any and all points are not answered fully and accompanied by lawfully
> documented evidence, as provided herein, that will be Default on the part of the
> CITIMORTGAGE   INCORPORATED.     Non Response   according   to   the
> conditions herein will be default.  Incomplete answers and/ or lack of documented
> evidence   as   outlined   herein   will   be   Default.     If   CITIMORTGAGE
> INCORPORATED fails to respond as outlined herein, within 21 calendar days,

---

[5] This particular document contains 115 "averments of fact."

> this will be Default.  Non Response will be a Self Executing Confession of Judgment by CITIMORTGAGE INCORPORATED, and will be complete agreement with all the statements, terms, and conditions of this contract.  This is a contract in Admiralty.  Any officer of the court that interferes or involves himself/herself with this claim will be added to this claim and become a Third Party Defendant.  All Third Party Defendants are jointly and severally liable for this claim.

*Id.* at 14.  When CitiMortgage did not respond to Mr. Ade Bey's satisfaction,[6] he filed a "Judicial Notice," stating that "Defendant has not responded and has failed to respond within the allotted time thus WE have an agreement in fact."  Pl.'s Notice [doc. # 93] at 2; *see also* Pl.'s Aff. of Default J. / Estoppel & Laches by Acquiescence / Certification of Non Response Re: Aff. of Negative Specific Averment [doc. # 100] ¶¶ 5-8 (asserting that CitiMortgage's failure to respond adequately to the "Affidavit of Negative Averment" meant that it is barred from continuing this litigation by default, acquiescence, consent, estoppel, laches, and *stare decisis*); *see also id.*, Aff. of Facts [doc. # 100-1] ¶ 4 ("The court now needs to move Sua Sponte as the matter is res judicata and the parties have an agreement in fact which is now stare decisis.").

This is, to put it mildly, not the way the Federal Rules operate – Mr. Ade Bey's clear conviction notwithstanding.  As the Court explained during the in-court status conference, Mr. Ade Bey, as a party to this lawsuit, may take discovery of CitiMortgage on matters related to the claims at issue in this case.  The Court similarly advised Mr. Ade Bey that he should familiarize himself with the *Federal Rules of Civil Procedure* and the District's Local Rules.  *See* Order dated Mar. 10, 2010 [doc. # 72].  While the Court applies the rules with some liberality to those,

---

[6] CitiMortgage responded by filing a Motion to Strike [doc. # 69], which this Court denied, explaining that: "While Defendant is correct that these are not proper filings under Rule 7 of the *Federal Rules of Civil Procedure*, the Court sees no reason to strike them given the Plaintiff's pro se status and that the filings are of no consequence.  The Court understands that Defendant denies all factual allegations set forth in Plaintiff's filings.  Plaintiff should familiarize himself with the Federal and Local Rules and is reminded that the Court will act only upon a motion by a party."  Order dated Mar. 10, 2010 [doc. # 72].

such as Mr. Ade Bey, who are proceeding *pro se*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), not even *pro se* parties are entitled to make up their own rules and insist that defendants follow them, *see, e.g.*, *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("'[A]ll litigants, including *pro ses*, have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice." (quoting *Minotti v. Lensink*, 895 F.3d 100, 103 (2d Cir. 1990) (alteration in original)).

Accordingly, in resolving CitiMortgage's Motion to Dismiss, the Court considers only those factual allegations contained in the operative complaint – here, the Amended Complaint [doc. # 67-1] dated February 24, 2010.  Under the *Federal Rules of Civil Procedure*, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009).  Two working principles underlie the Supreme Court's plausibility standard.  *See Iqbal*, 129 S.Ct. at 1949.  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1949).  The Rule 8 pleading threshold "does not require detailed factual allegations," but it nonetheless requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citation and quotation marks omitted); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) ("[A]lthough *Twombly* and *Iqbal* require 'factual amplification [where] needed to render a claim plausible, we reject [the] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts

beyond what is needed to make the claim plausible." (quoting *Ross v. Bank of America, N.A.*, 524 F.3d 217, 225 (2d Cir. 2008) (first alteration in original)).   "'Second, . . . 'determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1950); *see also Austen v. Catterton Partners V, LP*, ___ F. Supp. 2d ___, ___, 2010 WL 625389, at *2 (D. Conn. Feb. 17, 2010).   Finally, as previously mentioned, the Court is obligated to construe *pro se* pleadings liberally.   *See Agiwal*, 555 F.3d at 302; *Harris*, 572 F.3d at 72.

## III.   Background

Before considering Mr. Ade Bey's specific claims, the Court will endeavor to explain the general nature of Mr. Ade Bey's lawsuit.   As mentioned already, Mr. Ade Bey has submitted numerous and voluminous filings to be docketed in this case.   He has done the same in another case that is presently before this Court,[7] and the discussion in this section is equally applicable to that case.   From Mr. Ade Bey's filings and the in-court status conference (which related to both cases), the Court believes the following general account to be true.

Mr. Ade Bey's claims – both legal and factual – appear to be premised on at least three interrelated and overlapping theories that have preoccupied a certain subset of the population for at least the last three decades.   Other courts have referred to them as the "Redemptionist"[8] theory; the "vapor money" theory; and the "unlawful money" theory, and this Court will do the same, although the Court hastens to add that Mr. Ade Bey does not so characterize his claims.

---

[7] *See Shakir Ra Ade Bey v. CitiFinancial Auto*, No. 3:09CV1844 (D. Conn. filed Nov. 13, 2009). A Memorandum of Opinion granting the Defendant's motion to dismiss in that case is being filed contemporaneously with this opinion for substantially the same reasons explained herein.

[8] The "Redemptionist" theory arises out of the "Redemption movement," also either known as, or merely related to, the "free sovereign movement."

The "Redemptionist" theory seems to explain Mr. Ade Bey's relationship to the all-capital letter "RAYMOND MCLAUGHLIN."  As the Third Circuit has explained:

> [T]he "Redemptionist" theory . . . propounds that a person has a split personality: a real person and a fictional person called the "strawman."  The "strawman" purportedly came into being when the United States went off the gold standard in 1933, and, instead, pledged the strawman of its citizens as collateral for the country's national debt.  Redemptionists claim that government has power only over the strawman and not over the live person, who remains free.  Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. . . .  Adherents of this scheme also advocate that [individuals] copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008); *see also United States v. Landers*, 564 F.3d 1217, 1219 & n.1 (10th Cir. 2009) (discussing the theory's origins); *Clark v. Caruso*, No. 09CV10300, 2010 WL 746417, at *5 (E.D. Mich. Mar. 2, 2010); *Marr v. Caruso*, No. 1:07 CV 745, 2008 WL 4426340, at *4-5 (W.D. Mich. Aug. 22, 2008); *cf. U.S. v. James*, 328 F.3d 953, 954 (7th Cir. 2003).  The Ohio Supreme Court explains this theory further, as follows:

> The Redemptionists claim that by a birth certificate, the government created "strawmen" out of its citizens.  A person's name spelled in "English," that is with initial capital letters and small letters, represents the "real person," that is, the flesh and blood person.  Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the "strawman" is referenced, and the flesh and blood person is not involved.

*Ohio v. Lutz*, 2003 Ohio 275, P*12 (2003); *see also Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 758-61 (W.D. Va. 2007).

Another tenet of the Redemptionist theory is that when the United States Government "pledged the strawman of its citizens as collateral for the country's national debt," *Monroe*, 536 F.3d at 203 n.4, it created an "exemption account" for each citizen, identified by each person's Social Security number.  *See Bryant*, 524 F. Supp. 2d at 759.  When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially

making the U.S. Government ultimately responsible for satisfaction of their debts. *See id.* Moreover, each citizen's exemption account is virtually bottomless, meaning that those who understand this theory – and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as "redemption," *see id.* – never have to actually pay for anything.[9]  *See, e.g.*, *Dinsmore-Thomas v. Ameriprise Fin., Inc.*, No. 08CV587, 2009 WL 2431917, at *6 (C.D. Cal. Aug. 3, 2009); *Ray v. Williams*, No. CV04863, 2005 WL 697041, at *5 (D. Ore. Mar. 24, 2005) (describing the "Redemptionist" philosophy, whose adherents "assign an imaginary account number to some sort of direct treasury account, advocate that this direct treasury account has a balance equal to the monetary value the government places on the life of the individual, and then charge against this direct treasury account through the use of fraudulent checks"); *Lutz*, 2003 Ohio at P*13 ("By filing a UCC-1 financing statement, the flesh and blood person can make a claim against the assets obtained by the government from the 'strawman.'  The flesh and blood person Ronald Lutz, therefore, filed a UCC-1 financing statement against the assets earned by the 'strawman' RONALD LUTZ and held by the government.  By filing this statement, the Redemptionists believe, the flesh and blood person can draw against the funds earned by the 'strawman.'").

While the Court does not lightly ascribe such beliefs to anyone – and again, to be clear, Mr. Ade Bey has not explicitly stated these beliefs in so many words – the only plausible

---

[9] These and other arguments have been advanced for quite some time by those contesting the validity of the Sixteenth Amendment.  *See, e.g.*, *Coleman v. C.I.R.*, 791 F.2d 68, 69 (7th Cir. 1986) (Easterbrook, J) ("'Tax protesters' have convinced themselves that wages are not income, that only gold is money, that the Sixteenth Amendment is unconstitutional, and so on.  These beliefs all lead – so tax protesters think – to the elimination of their obligation to pay taxes."); *Barber v. Countrywide Home Loans, Inc*., No. 2:09CV40, 2010 WL 398915, at *4 (W.D.N.C. Oct. 7, 2009) (noting, in a case raising claims much like those here, that "plaintiffs are utilizing terminology and making demands that have been utilized by so called 'tax protestors' in this court in the past two decades").

explanation that this Court can discern for the arguments in Mr. Ade Bey's filings is that they are rooted in this Redemptionist theory.  This would explain, for example, Mr. Ade Bey's insistence on RAYMOND WINTSON MCLAUGHLIN being represented in all capital letters: that was (or is) Mr. Ade Bey's "strawman."  *See, e.g.*, Pl.'s Verified Affidavit of Facts by Specific Negative Averment [doc. # 68] ¶ 13 ("There is no evidence in fact that RAYMOND MCLAUGHLIN is not a fictional Unincorporated Corporation and Affiant denies that any such evidence exists."); *id.* ¶ 14 ("I deny that RAYMOND MCLAUGHLIN is a living breathing sentient man."); Pl.'s Reply to Mot. to Compel [doc. #  104] at 3 ("The capitalization of one's name, the creation of a "STRAWMAN" was/is a Corporate government creation and endeav[o]r . . . .").  It would also explain why Mr. Ade Bey recorded a security interest in and a power of attorney for "RAYMOND WINTSON MCLAUGHLIN," *see* Pl.'s Judicial Notice/Declaration of Status [doc. # 63], and why he objected during the in-court status conference to this Court's description of him as *pro se* – meaning representing oneself, *see* Black's Law Dictionary (8th ed. 2004) – insisting instead that he appeared *in propria persona*, Latin for "in one's own person," *see id.*[10] Since this lawsuit was commenced in the name of RAYMOND WINTSON MCLAUGHLIN, *see* Compl. [doc. # 1], it would be inconsistent with the Redemptionist theory for Mr. Ade Bey to appear *pro se*.  *See* Pl.'s Pet. to Compel [doc. # 94] at 1-2 (requesting that the Court order defense counsel to refrain from addressing Mr. Ade Bey "out of status" – i.e., as the upper- and lower-case "Raymond McLaughlin" – but stating that if defense counsel "wishes to address the 14th Amendment citizen legal fiction/U.S. vessel RAYMOND MCLAUGHLIN, they can continue to do as they've always done by directing their comments to RAYMOND MCLAUGHLIN").

---

[10] Mr. Ade Bey also signed all of his filings as "*in propria persona*."

The Redemptionist theory also sheds light on Mr. Ade Bey's otherwise puzzling practice of putting the words "IN ADMIRALTY" at the top of most of his filings, as well as his seeming preoccupation with the UCC.   "The Redemptionists claim that when the country went into bankruptcy, maritime law became the law of the land.  The only laws in force are the UCC, and every interaction between persons is financial."  *Lutz*, 2003 Ohio at P*15.  What is more, if Mr. Ade Bey does adhere to the Redemptionist view, that would unravel the mystery of the "$10,000,000 Indemnity Bond" [docs. # 90-91] he filed in this case, which purports to be secured by a "pre-paid account, exemption ID [a nine-digit number]" – i.e., an "exemption account" – as well as his demand for damages to be paid in pure silver, *see supra* note 2.

The Redemptionist theory's contentions regarding the 1933 bankruptcy of the United States and "exemption accounts" are also reflected by allegations in the Amended Complaint. *See, e.g.*, Am. Compl. [doc. # 67-1] at 4 ¶ 1-3 ("It is Plaintiff's contention that the UNITED STATES is and has been in bankruptcy since at least 1933 . . . .  [T]he gold standard was suspended by President Franklin Delano Roosevelt.  As a result, this made the dollar non-redeemable.  In addition, the people became the Creditor for the Bankrupt system.  As a result, a Federal Reserve Note became a debt note and does not have intrinsic value . . . .  As a result . . . , only the People (Creditors) can bring new monies into circulation.  Said monies are directly brought into existence from an Exemption Account which was created at the Federal Reserve. Thus, without a Creditor's signature and/or Social Security Number, no new monies can be created . . . ."); *see also* Pl.'s Verified Affidavit of Facts by Specific Negative Averment [doc. # 68] ¶ 35 ("There is no evidence in fact that the UNITED STATES is not bankrupt and Affiant denies that any such evidence exists."); *id.* ¶ 103 ("There is no evidence in fact that CITIMORTGAGE did not access RAYMOND MCLAUGHLIN's EXEMPTION ACCOUNT

and already has received the face value of the alleged "NOTE" and Affiant denies that any such evidence exists.").

The "vapor money" and "unlawful money" theories appear to be tenets or corollaries to the above-described "Redemptionist" theory.  As best the Court can discern, Mr. Ade Bey's arguments seemed to be based, at least in part, on these theories as well.  The "vapor money" theory states that "any debt based upon a loan of credit rather than legal tender is unenforceable." *Andrews v. Select Portfolio Servicing, Inc.*, No. 09CV2437, 2010 WL 1176667, at *3 (D. Md. Mar. 24, 2010).  For its part, the "unlawful money" theory holds that "the issuance of 'credit' . . . violate[s] Article I, Section 10 of the United States Constitution, which purportedly 'requires a state to accept and recognize only gold and silver coin as legal tender.'"  *Buckley v. Bayrock Mortg. Corp.*, No. 09CV1387, 2010 WL 476673, at *8 (N.D. Ga. Jan. 12. 2010) (quoting *Rudd v. Keybank, N.A.*, No. 2:05CV0523, 2006 WL 212096, at *5 (S.D. Ohio Jan. 25, 2006)).

The essence of the "vapor money" theory is that promissory notes (and similar instruments) are the equivalent of "money" that citizens literally "create" with their signatures. *See, e.g.*, *Demmler v. Bank One N.A.*, No. 2:05CV322, 2006 WL 640499, at *3 (S.D. Ohio Mar. 9, 2006).  This mechanism for the creation of "money" appears to be what Mr. Ade Bey means when he alleges that "only the People (Creditors) can bring new monies into circulation.  Said monies are directly brought into existence from an Exemption Account which was created at the Federal Reserve.  Thus, without a Creditor's signature and/or Social Security Number, no new monies can be created . . . ."  Am. Compl. [doc. # 67-1] at 4 ¶ 3.  Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets.  *See, e.g.*, *Demmler*, 2006 WL 640499, at *3. Then, according to the vapor money theory, the bank purports to lend the "money" that was

"created" by the citizen's signature *back to the citizen-borrower.  See, e.g.*, *id.*  As the court in

*Demmler* explained it:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money"
> that he gave to the bank.  He contends that [the lender] took his "money," i.e., the
> promissory note, deposited it into his account without his permission, listed it as
> an "asset" on its ledger entries, and then essentially lent his own money back to
> him.  He contends that [the lender] . . . "created" the money through its
> bookkeeping procedures.

*Richardson v. Deutsche Bank Trust Co. Ams.*, No. 3:08CV1857, 2008 WL 5225824, at *6-7

(M.D. Pa. Dec. 12, 2008) (quoting *Demmler*, 2006 WL 640499, at *3 (alterations in original)).

At this point in the argument, plaintiffs relying on the vapor money theory typically

introduce an additional wrinkle: whereas they gave the banks valuable "money" (in the form of a

promissory note), the banks gave them something that is essentially worthless: "mere" credit

(and the right to live in their homes, but that appears to be immaterial to the argument).  As

allegedly established by the "unlawful money" theory, issuing credit violates the Constitution's

prohibition against "mak[ing] any Thing but gold and silver Coin a Tender in Payment of Debts."

U.S. Const. Art I § 10.[11]  *See Buckley*, 2010 WL 476673, at *8; *see also* Pl.'s Obj. to Mot. to

Dismiss [doc. # 89] at 9-10 ("The efforts by the Defendant to collect Federal Reserve Notes from

Plaintiff when it knew that said notes are unconstitutional pursuant to Article 1, Section 10 . . .

are clearly unlawful.").

This "fact" has at least two clear benefits to the citizen-borrower, both of which Mr. Ade

Bey appears to claim for himself.  First, it means that the bank-lender gave essentially no

consideration, and risked nothing, in making the purported loan, rendering the transaction void

(or at least voidable) under general principles of contract law.  *See, e.g.*, *Torne v. Republic*

---

[11] The fact that Article I § 10 explicitly applies only to the States is a nuance either lost on or
purposely elided by adherents of this view.

*Mortg. LLC*, No. 2:09CV2445, 2010 WL 1904507, at *2 (D. Nev. May 10, 2010) ("Plaintiff claims his loan from Republic Mortgage is invalid because Republic Mortgage made the loan with credit rather than with direct cash."); *Demmler*, 2006 WL 640499, at *3 ("[Plaintiff] further argues that because [the bank] was never at risk, and provided no consideration, the promissory note is void *ab initio* and Defendants' attempts to foreclose on the mortgage are therefore unlawful."); *Rene v. Citibank*, 32 F. Supp. 2d 539, 544-45 (E.D.N.Y. 1999); *United States v. Schiefen*, 926 F. Supp. 877, 880-81 (D.S.D. 1995) (rejecting arguments that there was insufficient consideration to secure the promissory note, and that lender had "created money" by means of a bookkeeping entry); *see also* Pl.'s Verified Affidavit of Facts by Specific Negative Averment [doc. # 68] ¶ 74 ("There is no evidence in fact that CITIMORTGAGE is at risk when it allegedly lends money and Affiant denies that any such evidence exists."); *id.* ¶ 83 ("There is no evidence in fact that a Bank lends anything and Affiant denies that any such evidence exists.").

The second alleged benefit of this theory is that when borrowing from a bank, the citizen-borrower actually *comes out ahead* in the transaction – after all, she is the only one who gave anything of value, and it would constitute unjust enrichment for the bank to "keep" the value of what the citizen-borrower gave it. *See id.* ¶ 50 ("There is no evidence in fact that all PROCEEDS from the monetizing of the alleged "Promissory Note" do not belong to RAYMOND MCLAUGHLIN and NICOLE MCLAUGHLIN and Affiant denies that any such evidence exists."). And as already mentioned, banks typically list the value of promissory notes on the asset side of their accounting ledgers, treating the notes as the functional equivalent of cash. *See id.* ¶ 52 ("There is no evidence in fact that anything accepted by a Bank is not CASH and Affiant denies that any such evidence exists."). Since loans increase the asset side of the

ledger, the theory continues, general accounting principles dictate that banks must owe that increase in value to whoever created it – i.e., the citizen-borrowers. This contention is reflected in Mr. Ade Bey's Amended Complaint. *See id.* ¶ 10 ("There is no evidence in fact that CITIMORTGAGE does not owe RAYMOND MCLAUGHLIN $233,731 pursuant to GAAP and Affiant denies that any such evidence exists."); *see also Richardson*, 2008 WL 5225824, at *6 ("Plaintiff alleges that Regions Bank withheld information from him in order to freely trade the Plaintiff's promissory note for profit without distributing proceeds to the Plaintiff."); *Rudd*, 2006 WL 212096, at *3 (rejecting the same argument). As with the "Redemptionist" theory, although Mr. Ade Bey does not explicitly use the terms "vapor money" or "unlawful money," his numerous filings have more than sufficient indicia for the Court to conclude that his claims are premised on these theories.

The Court will consider each of Mr. Ade Bey's specific claims in this next section, but it is important to note that if, as the Court strongly suspects, the allegations contained in the Amended Complaint are premised on one or more of the above-described theories, that fact alone would be sufficient to grant CitiMortgage's Motion to Dismiss, as all three of these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years. *See, e.g.*, *Torne*, 2010 WL 1904507 (dismissing, in some instances *sua sponte*, claims alleging fraud, conversion, conspiracy, extortion, securities fraud, and violations of the Truth in Lending Act (TILA), the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and GAAP, all based on theories advanced here); *Barber v. Countrywide Home Loans, Inc*., No. 2:09CV40, 2010 WL 398915, at *4 (W.D.N.C. Oct. 7, 2009) (dismissing "utterly frivolous" and "patently ludicrous" claims of fraud, racketeering, and conspiracy, and advising plaintiffs that their "tactics are a waste of their time as well as the

court's time, which is paid for by hard-earned tax dollars"); *Marrakush Soc. v. New Jersey State Police*, No. 09CV2518 et al., 2009 WL 2366132 (D.N.J. July 30, 2009) (considering 19 consolidated cases raising arguments virtually identical to those here, all filed in the District Court for the District of New Jersey within approximately one year, and discussing similar influxes of cases in the Federal District Courts in Delaware and Florida); *Richardson*, 2008 WL 5225824, at *7 (dismissing claims as "patently frivolous and a waste of judicial resources"); *Demmler*, 2006 WL 640499, at *3 (characterizing such claims as "patently ludicrous" and noting that "these arguments have been repeatedly rejected by every court to consider the issue"); *Carrington v. Federal Nat'l Mortg. Assoc.*, No. 05CV73429, 2005 WL 3216226, at *2-3 (E.D. Mich. Nov. 29, 2005) (recognizing that these theories have been "universally rejected by numerous federal courts"); *Thiel v. First Fed. Savings & Loan Ass'n of Marion*, 646 F. Supp. 592 (N.D. Ind. 1986) (rejecting claims that lender had violated RICO and National Bank Act by issuing loan check in exchange for promissory note, and dismissing the claims as frivolous); *Nixon v. Individual Head of St. Joseph Mortg. Co.*, 615 F. Supp. 898, 900 (D.C. Ind. 1985) (finding the plaintiff's arguments and claims "absurd").  Lest there be any confusion, the Court notes that every other case cited in this decision that has considered similar claims also rejected them.

## IV.   Discussion

The Court will now discuss the claims asserted in Mr. Ade Bey's Amended Complaint [doc. # 67-1].  As explained herein, even construed very liberally, none of the nine counts state a legally-cognizable, factually-plausible claim upon which this Court could grant relief.  *See Arista Records*, 604 F.3d at 120-21; *Selevan*, 584 F.3d at 95.

The factual basis of Mr. Ade Bey's claims appears to be contained in the following allegations:

9)      On March 27th, 2009, a transaction with RESIDENTIAL FINANCE CORPORATION (hereinafter RESIDENTIAL) was undertaken for a $233,731.00 DRAFT.

10)     From said transaction, RESIDENTIAL used DRAFT as such by depositing it into a bank as a CASH ITEM pursuant to 12 USC 1813 (L) (1) or has sold the "note" to investors without the consent and authority of the Plaintiff.

11)     As a result of the actions undertaken in paragraph 7 and 8 by RESIDENTIAL, the now demanded balance of $233,731.00 of alleged mortgage was paid in full.

12)     In that regard no lawful debt now exists according to the principles of accounting, specifically the Generally Accepted Accounting Principles (hereinafter GAAP).

Am. Compl. [doc. # 67-1] at 2-3 ¶¶ 9-13.  The statutory provision cited, 12 U.S.C. § 1813(l)(1), is in the definitional section of the Federal Deposit Insurance Act, 81 Pub. L. No. 797, § 2, 64 Stat. 873, 874 (1950).  The provision cited in the Amended Complaint states, in its entirety:

(l) Deposit. The term "deposit" means—

  (1) the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by its certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a traveler's check on which the bank or savings association is primarily liable: *Provided*, That, without limiting the generality of the term "money or its equivalent", any such account or instrument must be regarded as evidencing the receipt of the equivalent of money when credited or issued in exchange for checks or drafts or for a promissory note upon which the person obtaining any such credit or instrument is primarily or secondarily liable, or for a charge against a deposit account, or in settlement of checks, drafts, or other instruments forwarded to such bank or savings association for collection.

12 U.S.C. § 1813(l)(1).   Based on these allegations, Mr. Ade Bey appears to argue that Residential, according to the definition in 12 U.S.C. § 1813(l)(1), deposited the signed "Draft" as a "cash item," *see* Am. Compl. [doc. # 67-1] at 3 ¶ 10, and that, through this act alone, "the now demanded balance of $233,731.00 of alleged mortgage was paid in full" such that "no lawful debt now exists according to the principles of accounting, specifically the Generally Accepted Accounting Principles (GAAP)," *id.* ¶¶ 11-12.

### A.      RICO (Count One)

Count One alleges a violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-68.   *See* Am. Compl. [doc. # 67-1] at 5-9 ¶¶ 1-14; Pl.'s RICO Case Statement [doc. # 65].   "RICO creates a private right of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'"   *Frey v. Maloney*, 476 F. Supp. 2d 141, 159 (D. Conn. 2007) (quoting 18 U.S.C. § 1964(c)); *see also* 18 U.S.C. § 1962 (listing acts prohibited by RICO).   To state a claim under 18 U.S.C. § 1964(c), "a plaintiff must plead (1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Frey*, 476 F. Supp. 2d at 159 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006)) (alteration in original).   Moreover, "all allegations of fraudulent predicate acts [under RlCO] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 178 (2d Cir. 2004).

The crux of Mr. Ade Bey's RICO claim is that CitiMortgage has attempted to collect an allegedly unlawful debt – the mortgage-secured promissory note that Mr. Ade Bey insists was a "Draft."  *See* Am. Compl. [doc. # 67-1] at 6 ¶¶ 1-4.   These allegations fail to state a viable RICO claim for at least two reasons.   First, Mr. Ade Bey has not alleged that CitiMortgage is part of a

RICO "enterprise"; and second, he has not alleged that CitiMortgage violated any of RICO's substantive provisions.  Either reason is sufficient to dismiss this claim.  *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999).

Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "[A] solitary entity cannot, as matter of law, simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise.'"  *Cadle, Co. v. Flanagan*, 271 F. Supp. 2d 379, 387 (D. Conn. 2003) (quoting *Cullen v. Margiotta*, 811 F.2d 698, 729–30 (2d Cir. 1987)).  "The Supreme Court has held that the 'person' liable under Section 1962(c), *i.e.* the Civil RICO defendant, must be an individual that is a distinct entity from the RICO 'enterprise.'"  *Daigneault v. Eaton Corp.*, No. 3:06CV1690, 2008 WL 2604929, at *2 (D. Conn. June 16, 2008) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).  Nonetheless, both Mr. Ade Bey's Amended Complaint and his Civil RICO Case Statement allege that CitiMortgage alone constitutes the entirety of the enterprise.  *See* Am. Compl. [doc. # 67-1] at 5-9 ¶¶ 1-14; RICO Case Statement [doc. # 65] ¶ 6.  Accordingly, Mr. Ade Bey has failed to allege an "enterprise" within the meaning of RICO.  *See King*, 533 U.S. at 161; *Frey*, 476 F. Supp. 2d at 159; *Cadle*, 271 F. Supp. 2d at 387.

More fundamentally, even assuming that Mr. Ade Bey has successfully alleged a RICO enterprise (which he has not), he has not alleged that CitiMortgage has violated any of RICO's substantive provisions.  *See Cofacredit*, 187 F.3d at 244.  RICO's substantive provisions make it "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  As Mr. Ade Bey avers, RICO *does* make it unlawful for "any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . . *collection of unlawful debt*."  18 U.S.C. § 1962(c) (emphasis added).  However, in the RICO context, the term "unlawful debt" has a particular meaning: it must be the result of illegal gambling and/or usurious lending, *see id.* § 1962(6), with "usurious lending" defined as lending at "at least twice the enforceable rate," *id.*

The only "unlawful debt" that Mr. Ade Bey alleges that CitiMortgage has attempted to collect is what CitiMortgage says is due by virtue of Mr. Ade Bey's (and/or RAYMOND MCLAUGHLIN's) obligations under the promissory note.  *See* Am. Compl. [doc. # 67-1] at 2-3 ¶¶ 9-13.  As mentioned, Mr. Ade Bey has alleged that the promissory note arose out of a real estate transaction.  *See id.*  Since Mr. Ade Bey has nowhere suggested that this debt relates in any way to gambling activity, or that the interest rate on the promissory note is "at least twice the enforceable rate," he has failed to allege that CitiMortgage's efforts to collect the debt violate RICO.  *See* 18 U.S.C. § 1962(c).

Similarly, Mr. Ade Bey's conclusory and factually-unfounded assertions that CitiMortgage committed mail and/or wire fraud in attempting to collect the allegedly-unlawful debt are insufficient to support a RICO claim.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, ___, 128 S. Ct. 2131, 2138-39 (2008); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Kramer v. Lockwood Pension Servs.*, 653 F. Supp. 2d 354, 389 (S.D.N.Y. 2009).  Mr. Ade Bey's claim that CitiMortgage committed extortion when it threatened to foreclose on his home also cannot form the basis of a RICO claim, at least standing alone.  *See Book v. Mortg. Elec. Registration Sys.*, 608 F. Supp. 2d 277, 282 (D. Conn. 2009) ("Those

claims [regarding threatening foreclosure] are nothing more than conduct undertaken in the ordinary course of business or litigation and cannot be fairly characterized as extortion that is independently wrongful under RICO.").  Finally, Mr. Ade Bey's argument that CitiMortgage "illegally" converted the "Draft" into a "Note" is without merit.  Mr. Ade Bey concedes that he signed the negotiable instrument at issue.  *See* Am. Compl. [doc. # 67-1] at 2 ¶ 9.  The face of the negotiable instrument places it squarely within Connecticut's definitions of both a "draft" and a "note."  *See* Conn. Gen. Stat. § 42a-3-104.   Accordingly, CitiMortgage may, pursuant to Connecticut law, "treat it as either" a draft or a promissory note.  *Id.* § 42a-3-104(e); *see also Fracker Const. v. Fenyes*, Nos. CV040410438, CV044000369, 2006 WL 2053821, at *5-7 (Conn. Super. Ct. July 7, 2006).

Since Mr. Ade Bey has failed to allege a violation of RICO, Defendant's Motion to Dismiss [doc. # 74] Count One is GRANTED.  *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (citation omitted), *vacated on other grounds*, 525 U.S. 128 (1998); *see also Thiel*, 646 F. Supp. at 597 (rejecting the claim, among others, that the lender had violated RICO by issuing a loan check in exchange for a promissory note, as the claim was based only on the plaintiffs' "vision of an appropriate monetary system that operates solely on legal tender transactions").

### B.      Fraud (Counts Two and Four)

Count Two and Count Four allege common-law fraud.  *See* Am. Compl. [doc. # 67-1] at 9-11 ¶¶ 1-4, 13-15 ¶¶ 1-6.  Under Rule 9(b) of the *Federal Rules of Civil Procedure*, a party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ.

P. 9(b); *Meijer, Inc. v. Ferring B.V.*, 585 F.3d 677, 692-94 (2d Cir. 2009); *Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995) (explaining that "Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit") (citation and quotation marks omitted).  Under Connecticut common law:

> Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.

*Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, No. 3:09cv1546(MRK), 2010 WL 1838072, at *3 (D. Conn. May 3, 2010) (quoting *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005) (alterations in original).

Generally speaking, both Count Two and Count Four allege that CitiMortgage "fraudulently induced" Mr. Ade Bey into executing the promissory note by misrepresenting that it "was actually lending money[,] when in fact nothing was lent."  Am. Compl. [doc. # 67-1] at 9-10 ¶ 2.  There are several fatal flaws here, but the Court will only mention the two most serious.

First, as Mr. Ade Bey concedes, the transaction at issue here was between himself and non-party Residential, *see id.* at 2 ¶ 9, who subsequently assigned the debt to CitiMortgage, *see id.* at 3 ¶ 13.  Since CitiMortgage played no role in the transaction, it could not have induced Mr. Ade Bey into signing anything – fraudulently or otherwise.  *See Flemming v. Goodwill Mortg. Servs., LLC*, 648 F. Supp. 2d 292, 296 (D. Conn. 2009).

Second, Ade Bey's contention that he was duped by the lender's claim that it "was actually lending money" when, "in fact[,] nothing was lent," Am. Compl. [doc. # 67-1] at 9-10 ¶

2, appears to invoke the "vapor money" theory.  *See, e.g.*, *Torne*, 2010 WL 1904507, at *2 (rejecting the plaintiff's claim that "his loan from Republic Mortgage is invalid because Republic Mortgage made the loan with credit rather than with direct cash").  Insofar as Mr. Ade Bey's fraud claims are premised on the vapor money theory, that would be an independent reason for rejecting Mr. Ade Bey's claims.  Twenty-five years ago in a case raising similar claims, the District Court for the District of Indiana explained that a check issued by a bank or mortgage company "need not be 'legal tender'" within the meaning of § 10 of Article I of the Constitution "for a loan to be valid."  *Nixon*, 615 F. Supp. at 900.

> Private parties may enter into transactions to trade whatever they agree on as having equal value; they are not limited to gold and silver coins.  Here, the Mortgage Company traded its check for [the] promise to pay on the promissory note executed at the time of the mortgage's creation.  [Plaintiff] in turn traded the check for the house.  Neither transaction implicates or violates a constitutional restriction *on the states*.

*Id.* (emphasis in original).  As Mr. Ade Bey has apparently experienced personally, "the market place recognizes the value of credit," *id.*, and therefore it is simply not true that when credit was extended, "nothing was lent," Am. Compl. [doc. # 67-1] at 9-10 ¶ 2; *see Nixon*, 615 F. Supp. at 900-01; *see also Andrews*, 2010 WL 1176667, at *3 (rejecting the claim that "any debt based upon a loan of credit rather than legal tender is unenforceable.").

Since Mr. Ade Bey has not alleged any viable claims of fraud, Defendant's Motion to Dismiss [doc. # 74] Counts Two and Four is GRANTED.  *See Flemming*, 648 F. Supp. 2d at 296; *Weinstein*, 275 Conn. at 685.

## C.    TILA (Count Three)

Count Three of the Amended Complaint alleges a violation of the federal Truth-In-Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*  *See* Am. Compl. [doc. # 67-1] at 11-13 ¶¶ 1-6. The basis of this claim is Mr. Ade Bey's allegation that he did not receive "all" of the TILA-

required disclosures.  *See id.* ¶ 5.  Under 15 U.S.C. § 1641(b), in actions against an assignee, such as CitiMortgage, "written acknowledgement of receipt [of the required disclosures] by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof."  Moreover, Mr. Ade Bey may sustain a claim for violation of the TILA's disclosure requirements only "if the violation . . . is apparent on the face of the disclosure statement."  *Id.* § 1641(a); *see also General Elec. Capital Corp. v. DirecTv, Inc.*, 94 F. Supp. 2d 190, 203 (D. Conn. 1999).

In addition to being overly conclusory, the factual allegations related to Count Three are belied by the TILA Disclosure Statement and the Receipt of Notice of Right to Cancel that CitiMortgage has submitted.  *See* TILA Disclosure Statement & Receipt of Notice of Right to Cancel, Def.'s Mem. in Supp. of Mot. to Dismiss [doc. # 75] Exs. C-D.[12]  Both documents are dated March 27, 2009; both were signed by "Raymond McLaughlin" and Nicole McLaughlin, *see id.*; and both are in compliance with TILA's disclosure requirements, *see* 12 C.F.R. § 226. Mr. Ade Bey's bare assertion that these disclosures did not contain "all" of the required disclosures is simply wrong as a matter of law.  *See Lewis v. Greentree Mortg. Serv.*, 51 Fed. Appx. 68, 2002 WL 31640439, at *1 (2d Cir. 2002) (summary order) ("[T]here was no violation of the Truth in Lending Act on the face of the mortgage documents that would render [the defendant] liable as an assignee of the loan."); *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 150 (3rd Cir. 2009).

---

[12] These documents may be considered by the Court in considering CitiMortgage's Motion to Dismiss because of Mr. Ade Bey's allegations that he did not receive them.  *See* Am. Compl. [doc. # 67-1] at 11-12 ¶¶ 1-5.; *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered [on a motion under Rule 12(b)(6)].").

Here, too, insofar as Mr. Ade Bey's TILA claim is premised on the alleged failure to provide him with "true, complete, accurate or timely documents," Am. Compl. [doc. # 67-1] at 12 ¶ 4, or to return his "money," *id.* ¶ 5, the claim appears to be based on, *inter alia*, the "vapor money" theory. To the extent that the TILA claim is so premised, it is simply untenable. *See, e.g.*, *Torne*, 2010 WL 1904507, at *3. While Mr. Ade Bey may believe that lenders should have to provide disclosures that are in accordance with his beliefs regarding what constitutes "real" money, the Truth-In-Lending Act requires no such thing. *See Thiel*, 646 F. Supp. at 597 (rejecting claims based only on the plaintiffs' opinions regarding "an unjust system of commercial transactions").

Accordingly, Defendant's Motion to Dismiss [doc. # 74] Count Three is GRANTED. *See Lewis*, 2002 WL 31640439, at *1.

### D.       Remaining Claims (Counts Five through Nine)

Similarly, none of Mr. Ade Bey's other claims survive the motion to dismiss. Count Five alleges various violations of the Uniform Commercial Code (UCC). *See* Am. Compl. [doc. # 67-1] at 15-16 ¶¶ 1-3. But Article 9 of the UCC, which Mr. Ade Bey alleges was violated, *see id.*, is not applicable to real estate mortgages. *See State Nat'l Bank v. Dick*, 164 Conn. 523, 531 (1973). As noted in *Dick*, Mr. Ade Bey's argument

> overlooks the fundamental precept of article 9 of the Uniform Commercial Code, which applies only to the creation of a security interest in personal property or fixtures. This is made explicit in the text of comment four to [Article 9, as codified in Connecticut], which says: "This Article is not applicable to the creation of . . . [a] real estate mortgage."

*Id.* (quoting Conn. Gen. Stat. § 42a-9-102). Therefore, CitiMortgage's Motion to Dismiss [doc. # 74] Count Five is GRANTED.

Count Six purports to state a claim for violations of Section 5 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78(e), based upon CitiMortgage's alleged purchase of an "Unregistered Security." Am. Compl. [doc. # 67-1] at 17 ¶¶ 1-3. However, simple real estate transactions, like the one at issue here, are not securities transactions. *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 88-89 (2d Cir. 1994). Since Mr. Ade Bey has alleged only this real estate transaction as forming the basis of this claim, CitiMortgage could not have violated Section 5 of the Securities and Exchange Act of 1934, *see id.*, and its Motion to Dismiss [doc. # 74] Count Six is GRANTED.

Count Seven alleges a violation of several provisions of the National Bank Act of 1864. *See* Am. Compl. [doc. # 67-1] at 17-20 ¶¶ 1-5. However, not only does the Amended Complaint dramatically misquote provisions of the United States Code, *see* Def.'s Mem. in Supp. of Mot. to Dismiss [doc. # 75] at 13-15, but even overlooking these errors where possible, Count Seven fails to state a viable claim. The provisions that Mr. Ade Bey purports to cite either do not provide for a private right of action, *see* Am. Compl. [doc. # 67-1] at 17 ¶¶ 1, 3, 5; have been repealed, *see id.* ¶ 2; or apply only to entities, unlike CitiMortgage, that *possess* the real estate in question, *see id.* ¶ 5. Therefore, these allegations fail to state a claim upon which the Court could grant relief, and Defendant's Motion to Dismiss [doc. # 74] Count Seven is GRANTED. *See Iqbal*, 129 S. Ct. at 1940-41; *see also Thiel*, 646 F. Supp. at 596.

Count Eight, labeled "No Contract," *see* Am. Compl. [doc. # 67-1] at 20 ¶ 1, also fails to state a claim. In that count, Mr. Ade Bey once more invokes the UCC, and also alleges fraudulent inducement; "unnecessary harassment"; "torture"; "Enticement to Slavery," in violation of 18 U.S.C. § 1583; and a violation of 18 U.S.C. § 242, which punishes the deprivation of rights under color of law. *See id.* Most of these allegations are entirely

conclusory and merely repeat claims already discussed and rejected.  As for what remains, even if Mr. Ade Bey had alleged facts to support these fantastical allegations – which he has not done – it is well settled that neither 18 U.S.C. § 242 nor § 1583, both of which are criminal statutes, provide a private right of action.  *See Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985); *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996).  Therefore, Defendant's Motion to Dismiss [doc. # 74] Count Eight is GRANTED.

Finally, Count Nine alleges that CitiMortgage defamed RAYMOND MCLAUGHLIN by reporting the mortgage delinquent.  *See* Am. Compl. [doc. # 67-1] at 21.  Even assuming that Mr. Ade Bey could assert this claim on behalf of RAYMOND MCLAUGHLIN, this claim is preempted by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681(t)(b)(1)(F).  *See generally Ryder v. Wash. Mut. Bank, FA.*, 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005).  Although there is an exception to the FCRA's preemptive effect, *see* 15 U.S.C. § 1681h(e), Mr. Ade Bey's conclusory allegations that CitiMortgage committed slander are insufficient to invoke that exception, which would require him to establish "that (1) defendants furnished the credit information with 'malice or willful intent,' and (2) the information was false."  *Gorham-Dimaggio v. Countrywide Home Loans, Inc*., 592 F. Supp. 2d 283, 288 (N.D.N.Y. 2008) (quoting 15 U.S.C. 1681h(e)); *see also Ryder*, 371 F. Supp. 2d at 154-55.  Defendant's Motion to Dismiss [doc. # 74] Count Nine is therefore GRANTED.  *See Gorham-Dimaggio*, 592 F. Supp. 2d at 288.

## V.    Conclusion

In summary, and as explained above, CitiMortgage's Motion to Dismiss [doc. # 74] all claims in the Amended Complaint [doc. # 67-1] is GRANTED.   Additionally, Nicole McLaughlin's Motion to Dismiss Counterclaim [doc. # 108], which raises the same arguments

advanced by Mr. Ade Bey in seeking to dismiss the Counterclaim, is DENIED for the same reasons explained in the Court's Order dated April 21, 2010 [doc. # 96]; *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 211-13 (2d Cir. 2004).

Before discussing whether Mr. Ade Bey will be permitted one last opportunity to amend his complaint, the Court wishes to make one thing clear:  Mr. Ade Bey is undoubtedly entitled to the free exercise of his religion, and nothing the Court has stated herein is meant to cast doubt on that fact, or to diminish or demean Mr. Ade Bey or his chosen religion in any way.  The Court is ignorant as to whether this lawsuit is a product of Mr. Ade Bey's religious beliefs or not, but that issue is simply not relevant to the merits of his claims, for not even the constitutionally-protected right to free exercise entitles one to impose his views on others, such as the Defendant, when they conflict so fundamentally with the laws of this country.  As Chief Judge Frank Easterbrook of the Seventh Circuit put it in a related context, "Some people believe with great fervor preposterous things that just happen to coincide with their self-interest. . . . The government may not prohibit the holding of these beliefs, but it may penalize people who act on them." *Coleman v. C.I.R.*, 791 F.2d 68, 69 (7th Cir. 1986); *see also Thiel*, 646 F. Supp. at 597 ("[Plaintiffs,] along with all other Americans[,] are free to hold whatever economic or political views they so choose. With this freedom, however, comes the responsibility to express these views appropriately.  It is difficult to imagine a more irresponsible forum for the plaintiffs to express their particular economic views than this court.").

Mr. Ade Bey should appreciate that in pursuing what has, at least to date, been a quixotic endeavor, he has taxed the resources of the Defendant and this Court.  Other courts considering arguments similar to his have not only summarily dismissed them, but have even imposed monetary sanctions – payable in real money – against the *pro se* plaintiffs who have pursued

such claims. *See, e.g.*, *Thiel*, 646 F. Supp. at 596-97 (sanctioning a *pro se* plaintiff and explaining that "It does not require a trained lawyer to recognize that the allegations raised by plaintiffs in their complaint cannot support a cause of action for violation of the statutes cited therein. . . . If the imposition of sanctions represents a rude awakening in this regard, then so be it."); *Nixon*, 615 F. Supp. at 901 (awarding attorneys' fees to the defendant and imposing a $500 fine payable to the clerk of the court to compensate for the time expended docketing the plaintiff's numerous and voluminous filings); *see also Frances Kenny Family Trust v. World Sav. Bank FSB*, No. 04CV03724, 2005 WL 106792, at *4 (N.D. Cal. Jan. 19, 2005) (imposing sanctions on the plaintiffs and their attorney). Courts have also routinely dismissed these cases without leave to file an amended complaint, recognizing that any amendments would be futile. *See, e.g.*, *G&G TIC, LLC v. Alabama Controls, Inc.*, 324 Fed. Appx. 795, 2009 WL 1101390, at *2 (11th Cir. 2009) (unpublished); *Rodriguez v. Countrywide Home Loans, Inc*., No. 08-23119, 2008 U.S. Dist. LEXIS 110010, at *7-8 (S.D. Fla. Dec. 28, 2008) (dismissing five cases brought by *pro se* parties, explaining that "these cases are totally without any legal foundation," and denying leave to amend because "there is no way for them to state a cause of action based on this ['vapor money'] theory").

Moreover, the Court has serious doubts that this lawsuit was borne of sincere convictions. The promissory note and mortgage underlying this litigation, as well as the Federal Truth-In-Lending Disclosure Statement, were signed on March 27, 2009. *See* Am. Compl. [doc. # 67-1]; Def.'s Mem. in Supp. of Mot. to Dismiss [doc. # 75] Exs. C-D. Yet, as the Defendant brought to the Court's attention, more than four months earlier, Mr. Ade Bey filed a document on the land records of the Town of East Hartford entitled "Notice of U.S. Person Dissolution," *see* Def.'s Obj. to Pet. to Compel [doc. # 101] Ex. A, which purported to announce that "RAYMOND

WINTSON MCLAUGHLIN has experience[d] a Civil Death," *id.* at 1. The fact that Mr. Ade Bey nonetheless signed these documents on behalf of the very entity he declared to be "civil[ly] dea[d]" casts some considerable doubt on his intentions at the time.

The Court has carefully considered imposing sanctions on Mr. Ade Bey, and it is with considerable reluctance that it chooses not to do so at this time. Additionally, while the Court is *extremely* skeptical that Mr. Ade Bey could ever state a plausible claim for relief under the facts already pleaded in this case, the Court will, out of due regard for his *pro se* status, grant him one final opportunity to attempt to do so. *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999).

However, this opportunity to amend, should Mr. Ade Bey choose to take advantage of it, comes with several conditions. First, any proposed amended complaint must be filed no later than **July 2, 2010**, and it must be accompanied by a Motion to Amend with the proposed second amended complaint attached. If Mr. Ade Bey has not filed a second amended complaint by this date, his claims will be dismissed with prejudice, and the Court will decline supplemental jurisdiction over CitiMortgage's counterclaims, which it would then be free to file in Connecticut state court. Second, if he chooses to amend his complaint, Mr. Ade Bey may not rely on the "Redemptionist," "vapor money," or the "unlawful money" theories, as described above, in any way, and regardless of whether he actually uses those terms. Mr. Ade Bey is also on notice that the other arguments he has attempted to advance in support of his claims are also without merit – including that the real estate located in East Hartford is "Indigenous Private Real Property" beyond the reach of this Court's jurisdiction, *see* Pl.'s Verified Affidavit of Facts by Specific Negative Averment [doc. # 68] ¶ 47, and his assertions suggesting that his mere possession of the property creates a legal right to it, *see id.* ¶¶ 56-57 ("There is no evidence in fact that

34

possession is not nine-tenths of the law and Affiant denies that any such evidence exists. There is no evidence in fact that Shakir Ra Ade Bey is not in Actual Possession of the property and Affiant denies that any such evidence exists.").

Given the Court's interactions with Mr. Ade Bey during the in-court status conference, the Court is confident that he has the intelligence to understand and respect these conditions.  By requiring Mr. Ade Bey to seek this Court's leave to file a Second Amended Complaint, the Court and the Defendant can determine if Mr. Ade Bey has heeded this Court's warnings regarding the invalidity of the theories he has advanced in his Amended Complaint.  Should Mr. Ade Bey seek to file a Second Amended Complaint that purports to rely on the same theories for recovery, the Court will not allow the Second Amended Complaint to be filed, will dismiss this case with prejudice, and will consider imposing monetary sanctions, including the requirement that Mr. Ade Bey reimburse Defendant for the attorneys' fees it has expended in this litigation to date. The Court sincerely hopes that sanctions will not be necessary.[13]  Given the severity of these possible sanctions, the Court urges Mr. Ade Bey to carefully consider whether it is in is best interests to continue this litigation.

In light of the foregoing, Mr. Ade Bey's Motion to Compel [doc. # 94], Motion to Strike [doc. # 98], and Demand for Verification of Debt [doc. # 112], as well as CitiMortgage's Motion to Strike [doc. # 111] are all DENIED as moot.

---

[13] Mr. Ade Bey is also on notice that neither the "Indemnity Bond" [docs. # 90-91] nor the account that purports to secure it is valid for satisfying any monetary sanctions the Court would impose.  Instead, Mr. Ade Bey would be required to pay Defendant's attorneys' fees in a manner and form that is accepted by commercial banks in the United States.

IT IS SO ORDERED.


/s/  Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **June 11, 2010.**