

# Moorish Holy Temple of Science of the World

*Moorish Americans – Indigenous Natural Peoples of the Land/ Northwest Amexem*
*North America~The North Gate*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------X

Shakir Ra Ade Bey
RAYMOND MCLAUGHLIN;

          Plaintiffs;

         -against-

CITIMORTGAGE INC.;

         Defendant.

-------------------------------------------------------------------X

**IN ADMIRALTY**

Docket No. 3:09-CV-1762(MRK)

June 30, 2010

## VERIFIED AMENDED COMPLAINT FOR FRAUD/BREACH OF CONTRACT

Plaintiff, Shakir Ra Ade Bey hereby submits this Amended Complaint pursuant to Judge Mark Kravitz's Memorandum of Decision (Document 114) issued on June 11, 2010. I, Shakir Ra Ade Bey hereby affirm that the contents of this Complaint are firsthand knowledge, true, correct, and complete and hereby invoke *Haines v. Kerner, 404 U.S., 519-521; Richardson v. Flemming, 651 F 2d at 368 (quoting Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d. 251, (1976); Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957);* which states: "pleadings are not to be held to the same high standards of perfection as practicing lawyers."

This is an action for Fraud pursuant to Federal Rules of Civil Procedure, Rule 9(b) and Breach of Contract against the Defendant CITIMORTAGE INCORPORATED.

Plaintiff hereby makes the claim that the instrument/obligation in this matter became voidable when the Defendant participated in fraudulent activity violating the rules

1

of contract and committing fraud when it presented and continues to present the instrument as a NOTE when it is not.

## JURISDICTION

1) This Court has diversity jurisdiction under ***Public Law Statute At Large 62 Stat.930, 80th Congress.***

2) Plaintiffs grant jurisdiction to this court on all claims.

3) The amount in controversy exceeds $3,000.00 exclusive of interest and costs pursuant to ***Public Law Statute At Large 62 Stat.930, 80th Congress, Federal Question***.

## PARTIES

1) RAYMOND MCLAUGHLIN is a United States citizen.

2) The Defendant CITIMORTGAGE INCORPORATED (hereinafter CITIMORTGAGE) is a corporation that regularly conducts commercial activities in the State of Connecticut and elsewhere.

3) Shakir Ra Ade Bey is a Moorish (Muurish) American, In Propria Persona, Sui Juris, Grand Sheik, Public Minister of the Moorish Holy Temple of Science of the World, (A Religious Body Politic E*cclesiastical* Government).

## FACTS

4) On March 27th, 2009, a transaction with RESIDENTIAL FINANCE CORPORATION (hereinafter RESIDENTIAL) was undertaken for a $233, 731.00 alleged NOTE and subsequently a Mortgage Deed.

5) From said transaction, RESIDENTIAL assigned/sold/transferred the alleged NOTE and Open-End Mortgage to CITIMORTGAGE INC which has now assumed the entire contract with all liabilities.

6) On or about April 15th, 2009, Plaintiff received presentment from Defendant CITIMORTGAGE in which it represented that it was owed for an alleged mortgage in the amount of $233,731.00 and that the first payment was due on May 1st, 2009.

7) On July 19th, 2009, CHIEF EXECUTIVE OFFICER, SANJIV DAS, received without incident, a Request for Accounting. SANJIV DAS was required to validate the alleged debt.

8)   SANJIV DAS was given fourteen (14) days to respond. As of the date of this writing, no answer has been received.

9)   On July 27th, 2009, CITIMORTGAGE with a known mailing location in the city of DES MOINES, IA was also sent a Request for Accounting. The mail was delivered without incident.  No answer has been received.

10)  SANJIV DAS and CITIMORTGAGE have been asked unsuccessfully to produce the CONTRACT that caused and/or created the alleged debt and to explain the contents of the contract.

11)  On August 12th, 2009, "The Open-End Mortgage" were revoked, canceled, and rescinded. A Revocation of Power of Attorney was also recorded, extinguishing all Trustee, Beneficiary, Grantee, Mortgagee, Power of Attorney, and/or any other relationships that may have existed. All documents were recorded publicly. All signatures were rescinded. In addition, the "NOTE" was registered publicly as evidence of payment.

12)  **ALL OF THE AFOREMENTIONED ACTIONS IN PARAGRAPH 11 WAS COMMUNICATED TO THE DEFENDANT.**

13)  CITIMORTGAGE is a stranger to the original transaction and has contributed nothing to the betterment of the property.

14)  Shakir Ade Bey and Nicole McLaughlin have the only equitable interest and claim in the property commonly referred to as 36 Heather Drive, East Hartford, Connecticut as a result of maintenance work, renovation work, and general upkeep of the property done with their own hands and energy.

FIRST CAUSE OF ACTION FOR FRAUD

1)   On March 27, 2009, an instrument believed to be a "NOTE" by Plaintiff was allegedly "executed" in the principal amount of Two Hundred Thirty Three Thousand Seven Hundred Thirty One Dollars ($233,731.00).

2)   Plaintiff hereby claims that said negotiable instrument at the center of the transaction was presented as a promissory "NOTE" whereas it was a promise to pay.

3)   Upon information and belief, Plaintiff alleges that the presentment of the instrument as a promissory "NOTE" is fraud as it is not a promissory "NOTE" as defined at ***31***

*CFR 103.11(u),* the only place where 'promissory note' is defined. The instrument was fraudulently presented as a promissory "NOTE" then, and is still now being presented as a promissory "NOTE" by the Defendant which is false representation.

4) The instrument was not presented and construed as anything else and was believed by Plaintiff to be a 'Promissory Note' - Monetary Instrument as defined at *31 CFR 103.11(u).* The instrument was presented as a simple "promise to pay" agreement.

5) Plaintiff claims in this count for Fraud that after a careful and exhaustive inspection of the alleged promissory NOTE and the Mortgage Deed as well, there was no mention of the fact that the instrument was a ***hybrid or fall-between*** instrument that could possibly be "***treated***" as something else.

6) There were no mention, hint, clue, inkling, or innuendo that the instrument may be, was going to be, should be, can be, could be, might possibly be ***"treated" as a "draft or a promissory note."***

7) Furthermore, it was never verbally explained that the "negotiable instrument" was a hybrid, a fall-between, that may be, was going to be, can be, could be, might possibly be ***"treated" as a "draft or a promissory note."***

8) No disclosure was given that the instrument could be ***treated" as a "draft or a promissory note."*** In fact, Plaintiff was lied to when told that the instrument was a promissory "NOTE."

9) The Title of the Instrument states "NOTE" and simultaneously evidences an "***Order to Pay***" on Page 1 which states, "***pay*** the principal sum of ..........plus interest ***to the order of*** Lender." It is a fundamental Principle of Law that a "promissory note" cannot evidence an "***order to pay***" as stated in *31 CFR 103.11(u)* which states: "*Promissory note is defined as a Monetary instrument – (u) Monetary instruments....Monetary instruments include.....All negotiable instruments (including personal checks, business checks, official bank checks, cashier's check, third-party checks, **promissory notes (as that term is defined in the Uniform Commercial Code)**.....*" The only definition for a promissory note found in the <u>Uniform Commercial Code is at 9-102, Definition 65</u> which *states: "**Promissory Note** means an instrument that evidences a promise to pay a monetary obligation, **does not evidence an order to pay**, and <u>does not contain an acknowledgment by a bank that</u>*

_the bank has received for deposit a sum of money or funds._" This definition is also adopted by Connecticut at its Commercial Transactions Title 42a-9-102.  There is no other definition for 'promissory note.' The instrument at the forefront of Plaintiff's claim clearly evidences two (2) separate "**_orders to pay_**." (See **EXHIBIT A** hereto attached). Additionally, _Promise means "a written undertaking to pay money signed by the person undertaking to pay. An acknowledgment of an obligation by the obligor is not a promise unless the obligor also undertakes to pay the obligation._" Connecticut Commercial Transactions Title 42a-3-103.

10) The presentment of the instrument as a promissory "NOTE," and its continued presentment by the Defendant that it is a promissory "NOTE," is false representation made as a statement of fact which is untrue.  The presentment was made with the intent to induce reliance that the instrument was in fact a promissory "NOTE" when as a fundamental Principle of Law, it cannot be a promissory "NOTE" as it evidences an **_"order to pay."_** The instrument on its face evidences the intent to deceive based on the fact that it is entitled "NOTE" while evidencing an "**_order to pay_**" at the same time. As such, the title is improper and was intentionally done to deceive, trick, and confuse.

11) Furthermore, Judge Mark Kravitz ruled and decided that CITIMORTGAGE had every right pursuant to Connecticut Law, to **_treat_** the instrument "**_as a "draft or a promissory note."_**" Plaintiff's argument has always been that there was no agreement for the instrument to **_treated_** **_as a "draft or a promissory note"_** and that the Instrument was already used as a DRAFT by RESIDENTIAL FINANCE CORPORATION who was entitled to enforce it. (_See Conn. Gen. Stat. § 42a-3-104(e)._ The agreement required and called for the signing and implementation of a promissory "NOTE" not an instrument that may be **_"treated" as a "draft or a promissory note."_**" This **_treatment_** is beyond the scope of the agreement.

12) This ruling and decision on the other hand, did not take into account that even though CITIMORTGAGE may have such a right, **_the Plaintiff was not informed of this nor was it part of the agreement._** The 'negotiable instrument' was presented as a promissory "NOTE" and continues to be presented as a promissory "NOTE" by

the Defendant. **"NOTE" means "PROMISSORY NOTE" as defined at *31 CFR 103.11(u).***

13) In his Ruling, *Memorandum of Decision [Doc. # 114 on page 25*], Judge Mark Kravitz ruled and decided that: "***The face of the negotiable instrument places it squarely within Connecticut's definitions of both a "draft and a "note."*** *See* Conn. Gen. Stat. § 42a-3-104. "***Accordingly, CitiMortgage may, pursuant to Connecticut law, "treat it as either" a draft or a promissory note".*** Id. § 42a-3-104(e); see also *Fracker Const. V. Fenyes,* Nos. CV040410438, CV 044000369, 2006 WL 2053821, at *5-7 (Conn. Super. Ct. July 7, 2006). Conn. Gen. Stat. § 42a-3-104(e) further states that an instrument is a "*NOTE" if it is a "promise" and "DRAFT" if it is an "order."* So, what is an instrument that can be ***treated*** as both a promise and an order? It is not a promissory "NOTE" or a "DRAFT" because it is the fusion of two different things to create something new - a hybrid. Judge Mark Kravitz, by his ruling, has admitted that the instrument is not a promissory "NOTE" and that it can only be ***treated*** as a promissory "NOTE," based on the fact that as a fundamental Principle of Law, a promissory "NOTE" cannot evidence an "***order to pay."*** The instrument is a Hybrid. The instrument clearly evidences an **"order to pay"** (*See* **EXHIBIT A** *hereto attached*) in two separate places. The fact that the negotiable instrument may be ***treated*** as something else, does not mean that it is something else.  It is a Hybrid Instrument created as an integral part of a scheme orchestrated to deceive and commit fraud.  As clearly stated in Connecticut Commercial Transactions Title 42a-3-104(f), "*An instrument may be a check even though it is described on its face by another term....*" The ***treatment*** of the instrument as a promissory "NOTE" does not make it a promissory "NOTE" based on the fundamental Principle of Law that a promissory "NOTE" cannot evidence an "***order to pay."*** The ***treatment*** of the instrument as a promissory "NOTE" is a ***treatment*** that does not change the fact that it is not a promissory "NOTE" even though it is entitled "NOTE." The continual reference to the instrument as a "NOTE" in order to swindle, is furtherance of the perpetual fraud and to unjustly gain by using the instrument as both a promissory "NOTE" and a "DRAFT" without just compensation. RESIDENTIAL and CITIMORTGAGE have both made false representations and statements of facts

which are untrue and that they knew were untrue. CITIMORTGAGE has represented the instrument as a promissory "NOTE" in this case on several occasions. The statements were clearly made with the intent of inducing reliance thereon that the instrument was a promissory "NOTE." Judge Mark Kravitz's ruling cements the fact and law that the instrument can only be ***treated*** as a "NOTE."

14) *It was never disclosed in the agreement that the instrument could be **"treated"** as a DRAFT or a NOTE? Plaintiff never agreed that the instrument might be used as a DRAFT or a NOTE or as BOTH?*

15) Judge Mark Kravitz has acknowledged, confirmed, proved, and admitted to ***fraud in the factum*** and that CITIMORTGAGE "legally" committed fraud pursuant to Connecticut Statute because of the fact that the instrument is one that "***places it squarely within Connecticut's definition of both a "draft and a "note"*** even though, and irrespective of the fact that, it was presented as a "promissory note" and continues to be presented as a "promissory note" as defined at ***31 CFR 103.11(u),*** by the Defendant. The very title and character of the instrument is deceiving.

16) ***THE INSTRUMENT WAS NEVER WRITTEN THAT IT WAS, VERBALLY EXPLAINED THAT IT WAS, OR CONSTRUED THAT IT WAS, OR WAS GOING TO BE "SQUARELY WITHIN CONNECTICUT'S DEFINITION OF BOTH A DRAFT AND A NOTE" IN THE AGREEMENT?*** (See "NOTE" **EXHIBIT "A"** and "OPEN-END MORTGAGE" **EXHIBIT "B"** hereto attached**).**

17) In furtherance of the fraud, Judge Mark Kravitz ruled and decided, "***Accordingly, CitiMortgage may, pursuant to Connecticut law, "treat it as either" a draft or a promissory note.***" Even though CITIMORTGAGE may be "legally" allowed under Connecticut Statute to ***"treat it as either,*** *it does not mean that the **treatment** is void of fraud.* It is fraud in the factum because Plaintiff was in agreement that the instrument was a 'promissory note' as defined at ***31 CFR 103.11(u),*** as opposed to a "***fall-between"*** Hybrid instrument that may be ***treated*** as either a DRAFT or a promissory NOTE. This misrepresentation goes to the actual character of the instrument. The Supreme Court's decision in *Langley v. FDIC, 484 U.S. 86, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987),* renders a loan agreement entirely void because of fraud in the factum as fraud which occurs "*within the instrument itself.*"

"Fraud in the factum occurs when a party is tricked into signing an instrument *__without knowledge of its true nature__* or contents. See id. at 93." Thus, to constitute fraud in the factum a misrepresentation must go to the *__essential character of the document signed__*, not merely to its terms. See 604 Columbus, 968 F.2d at 1346-47 (citing other cases). *Vasapolli v. Rostoff, 39 F.3d 27 (1st Cir. 11/08/1994).*

18) Furthermore, Plaintiff reiterates that the 'negotiable instrument was never a promissory "NOTE" and cannot be a promissory "NOTE" as defined in **31 CFR 103.11(u),** Monetary Instruments; even though it was presented as such and continues to be presented as such by the Defendant. The Hybrid Instrument, which evidences an *__"order to pay"__* which has been submitted numerous times by Counsel, on its face squarely places it within the "*four corners doctrine*" that the instrument was a Hybrid instrument and was already used as a DRAFT which is not part of the agreement. It cannot now be used as a promissory "NOTE" by the Defendant pursuant to Judge Mark Kravitz's ruling that it can only be treated as *__"either"__* not **BOTH**. The Hydrid Instrument was already used as a DRAFT by RESIDENTIAL FINANCE CORPORATION evidenced by the "ALLONGE PAGE." The evidence that the instrument is a Hybrid Instrument is within the instrument itself. *The agreement was not for a Hybrid Instrument.* Plaintiff was lead to believe that the Instrument was a NOTE which means "Promissory Note" as defined in **31 CFR 103.11(u),** Monetary Instruments. This goes to the very **core and character of the Instrument itself –** an element of fraud in the factum and in turn **BREACH OF AGREEMENT.**

19) And as stated in *United States v. Throckmorton, 98 U.S. 61 (1878), "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments."* ___As a result, Actual Possession is the Lien.___

20) *"The general rule is that if deception causes a misunderstanding as to the fact itself (fraud in the factum), there is no legally recognized consent because what happened is not that for which consent was given." Rollin M. Perkins & Ronald N. Boyce, Criminal Law § 3, at* 1079 3d. ed 1982). The fact that the instrument was fraudulently presented and continues to be presented as a promissory "NOTE" in this matter, has

caused damages to Plaintiff in that he has been deprived of his instrument which was obtained by Defendant through intentional orchestrated deception by fraud and false pretense. Defendant has continued with its intent to induce and deceive; to harass and defraud Plaintiff with malice through presentments which seek to collect on an instrument that is not a promissory "NOTE" and was already used as a "DRAFT."

21) Plaintiff is informed and believes and thereon alleges that Defendant had every intention of enforcing the instrument as a promissory "NOTE" when in law and fact, the instrument was never a promissory "NOTE" and cannot be a promissory "NOTE."

22) Only the Defendant understands the agreement and knows its contents. "*Connecticut contract law provides that an ambiguous contract must be construed against its drafter-here,*" *CITIMORTGAGE*. See Southern New England Contracting Co. v. Connecticut, 165 Conn. 644, 656, 345 A.2d 550, 557 (1974) *("[A] contract which is susceptible of two meanings must be construed against the party who drew it.")*

23) "*To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an* identical understanding by the parties." (Internal quotation marks omitted.) **Lussier v. Spinnato, 69 Conn. App. 136, 140, 794 A.2d 1008**, cert. denied, **261 Conn. 910, 806 A.2d 49 (2002)**.

24) Plaintiff was induced and Defendant has continued with its intent to induce reliance thereon; to deceive by its presentations and assertions that the instrument is a promissory "NOTE" as defined in *31 CFR 103.11(u).* Defendant has continued the deception by insisting that the instrument is a "promissory NOTE" which shows the fraudulent intent of inducement to steal additional property. Defendant has still maintained that it has a security interest in the property due to the alleged promissory "NOTE" which has caused stress, emotional and psychological injuries. The acts of the Defendant are malicious, fraudulent and oppressive. There were false representations such as statements received by Plaintiff that were made as statements of facts which were untrue and known to be untrue. Plaintiff was

induced to rely on the false statements of facts that the instrument was a promissory "NOTE" when in fact it was not and cannot be, as a matter of fact and law.  Presently, the inducement and deception is still occurring as the instrument is still being presented as a promissory "NOTE" by Defendant's Counsel and the Court in an order to induce reliance on the instrument that it is a promissory "NOTE." The instrument was already used as "DRAFT" as evidenced by the "ALLONGE PAGE," and according to Judge Mark Kravitz's ruling and decision, it can **_only_** be **_treated_** as **_"either."_**  Plaintiff further relied on the false statements of facts and subsequently lost properties in the process to his detriment. The continued false representation by the Defendant that the instrument is a promissory "NOTE" is continual and has gravely inflicted undue stress and strain into Plaintiff's life because of the persistence of Defendant's assertions that it has a security interest in the property, if any, which as illustrated, was obtained through fraudulent representations and false pretense.

25) Plaintiff's claim is that the alleged promissory "NOTE" is not a promissory "NOTE" as defined **_31 CFR 103.11(u)_** and is in fact a Hybrid Instrument. A promissory "NOTE," as a fundamental Principle of Law, cannot evidence an **"order to pay."** Based on the proven fact that the instrument was, and is still being presented as a promissory "NOTE," is fraud. Defendant is further perpetuating the fraud of claiming that it is indebted to, based on the Hybrid Instrument that it is calling a promissory "NOTE."

26) Plaintiff seeks relief from the fraudulent enforcement of the Hybrid Instrument that Defendant is claiming to be a promissory "NOTE."  Plaintiff claims that Defendant made false representation as a statement of fact by making presentments as to the alleged debt thus claiming that the instrument is a promissory "NOTE" when it is not and cannot be, as a matter of fact and law. The statement was untrue and known to be untrue by the Defendant. Furthermore, the statement was made with the intent of inducing reliance that in fact that the instrument was a promissory "NOTE." To the detriment of relying on said false statement of facts, Plaintiff lost his 'negotiable instrument' and was tricked into conveying interest in the property.

27) The entire transaction from its conception to its present point, should be viewed as one transaction by the Court. The fact that Defendant has assumed the alleged

promissory "NOTE" and "MORTGAGE," and is now claiming interest in the property, stems from the intial transaction. Even though the Defendant was not the entity at the outset of the transaction, the claims that it has alleged and is alleging, is a result of said transaction. The claims made against an Assignor are just as good against an Assignee. (*See Connecticut Commercial Transactions 42a-9-404*). The actual presentment of the instrument as a promissory "NOTE" was obviously not done by the Defendant, however, Defendant has continued to represent that the same instrument is a promissory "NOTE" as a statement of fact to effect payment.

28) The statement that the instrument is a "NOTE" is untrue and the Defendant knows that it is untrue. The Defendant has alleged that the "NOTE" belongs to it, thus it should be able to explain the true character of the instrument. The Plaintiff was induced to rely on the statement as a factual and true statement.

29) The reliance and trust placed by the Plaintiff on the statement of fact that the instrument was a promissory "NOTE" has caused the Plaintiff to suffer the theft of his 'negotiable instrument' and to convey interest in property. The Plaintiff relied on the statement of fact at the initial transaction which Defendant has benefited from. As of result, Plaintiff suffered to his detriment then, the loss of property (negotiable instrument), and now said property is still being referred to as a "promissory NOTE" by Defendant, who seeks to enforce it by stealing more property from Plaintiff. The Plaintiff has suffered severe stress and financial damages which includes, but is not limited to, the resources expended to seek relief by way of this suit, as a result of the Defendant's position that the instrument is promissory "NOTE" and its undertaking to enforce the fraudulent instrument as such.

30) The questions for the Court are then, "*If a fully disclosed lay person knew the aforementioned information that the instrument was not a "NOTE," but instead a Hybrid Instrument, would said person still take part in the transaction?* The second question is, "*Would said fully disclosed lay person have conveyed interest in the property knowing that the instrument was actually a Hybrid Instrument?* Third, "*Would a fully disclosed person take part in a transaction where there is evidence of fraud?*

SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

(Lacks Performance, Consideration, Mutual Consent, Meeting of the Minds, Disclosure)

1) Plaintiff repeats and realleges each and every allegation as stated above.

2) Shakir Ra Ade Bey hereby claims that Defendant CITIMORTGAGE INC breached the agreement as stated in the instrument entitled "NOTE" and that Defendant is now in default.

3) Shakir Ra Ade Bey hereby avers that a Loan was never received; Defendant has not performed to date per the agreement, and is fraudulently representing itself to be a Lender/Creditor.

4) The Defendant has not performed based on the contract in which it agreed to lend money.

5) To further illustrate this claim for breach of contract, Plaintiff will cite Judge Mark Kravitz's case *Nixon, 615 F. Supp. at 900* as used on page 27 of the Memorandum of Decision *[Doc. # 114];* a ruling issued by the District Court for the District of Indiana which states: *"Parties may enter into transactions to* **trade** *whatever they **agree on as having equal value**; they are not limited to gold and silver coins. Here, the Mortgage Company traded its check for [the] promise to pay on the promissory note executed at the time of the mortgage's creation. [Plaintiff] in turn **traded** the check for the house.........."* **TRADE** means "the act or business of **exchanging** commodities by barter." *Black's Law Dictionary, Third Edition.*

6) On Page 1 of the instrument entitled "NOTE," it states, "***In return for a loan received from Lender***...." This statement means as indicated that a loan was already ***received*** from Lender and that's why the alleged "NOTE" was being presented to secure payment.  If a Loan was already ***received*** from Lender, why was it necessary to ***trade*** a "promissory note" for a check in addition to, and knowing that, a loan was already ***received***? If RESIDENTIAL or CITIMORTGAGE were loaning money, why do they need to trade? Based on this, RESIDENTIAL provided a loan (which was already ***received*** according to alleged "NOTE") and then traded its check for the promissory note. Hence giving up a loan and a check, none of which Plaintiff received.  Holding that the loan was already ***received*** as written on the alleged "NOTE," what would have been the outcome if Plaintiff did not sign the alleged "NOTE?" Would Plaintiff

still be allowed to keep the loan? So, based on Judge Mark Kravitz's cited case (*Nixon, 615 F. Supp. at 900)*, the Mortgage Company traded its *"check for [the] promise to pay on the promissory note"* after it was allegedly signed by Plaintiff. And based on the alleged "NOTE," a loan was already **_received_** prior to the presentment and signing of the alleged "NOTE" and that's the reason the alleged "NOTE" was being presented to secure payment.  Which is it? Did RESIDENTIAL or CITIMORTGAGE provide a loan and then present an alleged "NOTE" to secure payment or was the *"check traded for [the] promise to pay on the promissory note."* Plaintiff is confused.

7) According to the cited case, the transaction was a trade which specifies that that there was an **_even exchange of value; the check for "[the promise to pay on the promissory note."_**  So, the check was issued based on and from the "promissory note." The first mortgage company, RESIDENTIAL did not incurr a loss as the trade was an even exchange of value. Additionally, RESIDENTIAL received the DRAFT portion **_[the pay to the order of portion]_** of the Hybrid Instrument but no consideration was given in return for said portion. The DRAFT portion of the Hybrid Instrument was then used to sell the alleged debt to CITIMORTGAGE as it is a negotiable instrument. For allegedly issuing a check, the Mortgage Company received two things; **_"[the] promise to pay on the promissory note"_** in addition to the DRAFT portion of the Hybrid Instrument. Therefore, the transaction was never a trade but a perfectly and intentionally orchestrated swindle. Holding that the check was traded for *"[the] promise to pay on the promissory note,"* RESIDENTIAL received the DRAFT portion of the Hybrid Instrument free of charge without rendering consideration and/or detriment.

8) The check for **_"[the] promise to pay on the promissory note"_** trade was an even exchange of value at that juncture of the transaction. The next sequence was that Plaintiff lost the DRAFT portion of the Hybrid Instrument *without* receiving anything of value in return.  **_The contract lacks Consideration_**.  An agreement without consideration is not a contract. Mutual promises, which confer benefits and corresponding detriments on the parties, are sufficient consideration to support a bilateral contract.  See Calamari & Perillo, Contracts § 4-1; **_State National Bank v._**

*Dick,* *164 Conn. 523, 529, 325 A.2d 235 (Connecticut 1973).* No such mutuality of promises can be found in the alleged mortgage contract for 36 Heather Drive, East Hartford, Connecticut. In short, this loan contract is lacking in mutuality of promises and mutuality of detriment and the mortgage contract was for that reason *void ab initio.* Plaintiff asks this Court to find, declare, and adjudge that because CITIMORTGAGE made no promises to perform in any way whatsoever in favor, or for the benefit of RAYMOND MCLAUGHLIN and Shakir Ade Bey, the alleged contract (**EXHIBIT "B"** hereto attached) is lacking in mutuality of consideration, is wholly one-sided, unconscionable, and therefore VOID.

9) The contract attached as **Exhibit "B"** does not show that CITIMORTGAGE promised to pay or lend any money or to deliver or deed any property to RAYMOND MCLAUGHLIN or Shakir Ade Bey. Instead, for example, on page 2-**Exhibit "B"** the contract recites: *BORROWER COVENANTS that borrower is* ***lawfully seized of the estate*** *hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered......"* Similarly, on Page 1 it states: *"Borrower owes Lender the principal sum of TWO HUNDRED THIRTY THREE THOUSAND SEVEN HUNDRED THIRTY ONE AND 00/100 Dollars (U.S. $233,731.00)."* Plaintiff conveyed property, promised to pay, and gave up the DRAFT portion of the instrument. But what did CITIMORTGAGE give up or promised to do? The language of the mortgage contract, expressly quoted above, states exactly who provided all the consideration. To create a contract there must be a bargain in which there is manifestation of mutual assent, and a definite agreement upon which there is a meeting of the minds. In the absence of a meeting of the minds, a court cannot make a contract for the parties. If mutual assent is lacking, then the contract cannot prevail its express terms. *It is only when both parties intend to be bound that a contract can arise.* What the parties intended is determined from the language used, the circumstances, the motives of the parties, and the purposes they sought to acomplish. The contract fails as it does not squarely fall within the language of an expressed enforceable contract under Connecticut Statute. Plaintiff was tricked into entering into an unconscionable contract *one which no sensible man not under delusion, duress, or in*

distress would make, and such as no honest and fair man, with all the facts, would enter into.

10) The next sequence as described in the case was that "*[Plaintiff] in turn **traded** the check for the house.*" Holding that the aforementioned statement is true, and bearing in mind that the first trade (check for *"[the] promise to pay on the promissory note"*) was an even exchange of value, *why was there the need for a mortgage?* In every mortgage transaction, the alleged "NOTE" precedes the "**OPEN-END MORTGAGE,**" so based on the case (*Nixon, 615 F. Supp. at 900),* cited by Judge Mark Kravitz which held that the trade; (check for *"[the] promise to pay on the promissory note"*) was an even exchange of value, it is legal precedent that the instrument *purchased* the house and that there was no need for a mortgage.  Based on the first trade (check for *"[the] promise to pay on the promissory note"*) **and before the check for house trade**, the Plaintiff already had the house which is the only way it could have been mortgaged and conveyed.  Something gave the house to Plaintiff before the "**OPEN-END MORTGAGE**" came about because as it states on Page 2, "*BORROWER COVENANTS that borrower is **lawfully seized of the estate** hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered……*"  *Borrower" already had the property, and there was no need for the mortgage.  **Plaintiff could not have "mortgaged" the property unless he was legally seized of it.*** So, when was the property conveyed? **Was it before or after the check for house trade?**  The "**OPEN-END MORTGAGE**" was created by the alleged Lender who is the only one that can explain the language, terms and conditions as stated therein.

11) As a result of the fraudulent transaction, CITIMORTGAGE received three (3) things- **"[the] promise to pay on the promissory note," the DRAFT** portion of the Hybrid Instrument**, and security interest in the property.**  CITIMORTGAGE failed to perform per the agreement as no Loan was received from CITIMORTGAGE as written on Page 1 of the alleged "NOTE," "***In return for a loan received from Lender***…" The Plaintiff believed that "Lender" CITIMORTGAGE was going to lend money, but this is nowhere promised in the contract, nor recited as a ***fait accompli***.

12) This is plumb misrepresentation and fraud. This speaks volume as to why Plaintiff demands to be afforded a reasonable opportunity through discovery enforcement to inspect the various documents, books, and ledger entries of this accounting in order to determine the true source of the funds. The Defendant has not performed to date.

13) The contract lacks mutuality of promises and mutuality of detriment. There was no mutuality of consent or consideration, no meeting of the minds, only a unilateral fraud on the part of CITIMORTGAGE and RESIDENTIAL which pretended to do something "lend money" which it never did, nor even promised to do. The AGREEMENT/CONTRACT is in Default by virtue of **Non-Performance, Lack of Consideration, Mutual Consent, Meeting of the Minds, and Non-Disclosure.**

### THIRD CAUSE OF ACTION FOR STOLEN PROPERTY

1) Plaintiff repeats and realleges each and every allegation as stated above.

2) Plaintiff complains that the Hybrid Instrument was stolen and/or was obtained through fraud causing damage to Plaintiff and is now in possession of Defendant.

3) Plaintiff complains that the Hybrid Instrument was obtained through Theft by Deception and is fraud with unjust enrichment obtaining the Hybrid Instrument for free without consideration.

4) Plaintiff alleges that the true character of the instrument was not explained and Plaintiff had no reasonable opportunity to obtain such knowledge about the instrument entitled "NOTE."

5) Without full knowledge of the 'character' of the instrument, Plaintiff was a blind person being instructed that the instrument was a promissory note when in fact as demonstrated thoughout this complaint, it was not a promissory "NOTE."

6) Plaintiff hereby alleges that the instrument was stolen and obtained through false presentations made as a statement of fact that was known to be untrue.

7) The Plaintiff's property was stolen under false pretense that the instrument was a promissory "NOTE" when in fact it was a Hybrid Instrument.

8) Plaintiff demands the return of the negotiable instrument.

All the aforementioned acts were malicious, fraudulent and oppressive. Defendant misrepresented material facts with the intent to deceive in order to gain an advantage over Plaintiff for unjust enrichment. Plaintiff is informed and believes and thereon alleges that Defendant presented statements and continues to maintain that the instrument is a promissory "NOTE" for the sole and specific purpose of depriving Plaintiff of his property, to harass Plaintiff, and to defraud Plaintiff with malice. Plaintiff has been injured by the theft of his Negotiable Instrument in the amount of $233,731.00, which is in possession of the Defendant.

Defendant has irreparably damaged the Plaintiff by inflicting serious mental and emotional damage to Plaintiff through its perpetual fraudulent presentments of statements of facts that are untrue. CITIMORTGAGE by and through its Counsel has presented and/or referred to the Hybrid Instrument as a "NOTE" Forty-One (41) times as it has continued its efforts to deceive. (See **EXHIBIT "C"** hereto attached). By attempting to use the Hybrid Instrument as a promissory "NOTE," Defendant is committing further acts of fraud to benefit from both a promissory "NOTE" and a "DRAFT" without consideration to Plaintiff.

RELIEF SOUGHT

WHEREFORE, the Plaintiffs pray for judgment against Defendant as follows:

1. Plaintiffs be awarded treble the face value of the negotiable instrument in the sum of $ 701,193.00 for fraud, stolen property, and breach of contract;

2. Plaintiff seeks relief from the fraudulent enforcement of the Hybrid Instrument that Defendant is claiming to be a promissory "NOTE" and declare subsequent contracts *void ab initio;*

3. Plaintiff seeks relief from further losing anymore property due to the fraud alleged herein;

4. Plaintiffs be awarded punitive damages according to proof;

5. Defendant be compelled to perform according to loan agreement;

6. For such other and further relief as the court may deem just and proper

7. All Claims are stated in US Dollars which means that a US Dollar will be defined, as a

   One Ounce Silver coin of 99.999% pure silver, or the equivalent par value as established by law or the exchange rate as set by the US Mint, whichever is the

17

higher amount, for a certified One Ounce Silver Coin (US Silver Dollar). If the claim is to be paid in Federal Reserve Notes, Federal Reserve notes will only be accepted at Par Value as indicated above.

## VERIFICATION

I, Shakir Ra Ade Bey, declare as follows:

I am named as the Plaintiff in the above-entitled matter.

I have read the foregoing VERIFIED AMENDED COMPLAINT and know the facts therein stated to be true and correct.

I declare, under penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief.

Reserving ALL Natural God-Given Aboriginal Indigenous & Unalienable Birthrights, Waiving None 28 USC §1746

Dated: June 30, 2010

All Rights Reserved Without Prejudice.

Respectfully Submitted
RAYMOND MCLAUGHLIN
Shakir Ra Ade Bey
By: _Shade_
Shakir Ra Ade Bey, In Propria Persona,
Living Man, *Sui Juris*
c/t:36 Heather Drive
East Hartford, Connecticut State
Tel: 860-895-1093
Fax: 860-206-0200

18

## ACKNOWLEDGEMENT

On the 30th day of June in the year Two Thousand Ten A.D., Shakir Ra Ade Bey, known to me, a Notary Public, Commissioner of Deeds in the County of Hartford, Connecticut State absolutely without the United States produced acceptable Identification then was duly sworn before me that he is the Affiant as so described above.

**Dated:** June 30, 2010.

Notary Signature

Print Name

My Commission Expires
April 30, 2013

**NOTARY SEAL**

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was placed in an envelope and mailed via U.S.P.S. MAIL to:

William E. Murray (ct19717)
Michael T. Grant (ct27968)
EDWARDS ANGELL PALMER & DODGE LLP
PO BOX 1110
20 Church Street, 20th Floor
Hartford, CT. 06103
Phone (860) 525-5065

In this Aboriginal year 15095 [Gregorian calendar June 30, 2010]

Respectfully Submitted
RAYMOND MCLAUGHLIN
Shakir Ra Ade Bey

By: _Shade_

Shakir Ra Ade Bey, In Propria Persona,
Living Man, *Sui Juris*
c/t:36 Heather Drive
East Hartford, Connecticut State
Tel: 860-895-1093
Fax: 860-206-0200

20

# EXHIBIT "A"

# NOTE

MCLAUGHLIN
Loan #: 0902087373
MIN: 100185590000630306
Case #: 061-3452925-703

MARCH 27, 2009      COLUMBUS      OHIO
[Date]      [City]      [State]

36 HEATHER DRIVE, EAST HARTFORD, CT 06118
[Property Address]

Certified to be a true and correct copy of the original instrument.

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **RESIDENTIAL FINANCE CORPORATION** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED THIRTY THREE THOUSAND SEVEN HUNDRED THIRTY ONE AND 00/100 Dollars (U.S. $233,731.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND SEVEN-EIGHTHS percent (4.875%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MAY 1, 2009. Any principal and interest remaining on the first day of APRIL, 2039, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at 401 N FRONT ST, COLUMBUS, OH 43215 or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $1,236.92. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge      ☐ Growing Equity Allonge      ☐ Other [Specify] _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to these changes.

0902087373

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Certified to be a true and correct copy of the original instrument.

0902087373

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____   3·27·09
- BORROWER - RAYMOND MCLAUGHLIN  - DATE -

_____   3·27·09
- BORROWER - NICOLE MCLAUGHLIN  - DATE -

*[Sign Original Only]*

Certified to be a true and correct copy of the original instrument.

36.7                                    Page 3 of 3                          FHA Multistate Fixed Rate Note -- 12/01

MCLAUGHLIN
Loan #: 0902087373

## ALLONGE TO NOTE

ALLONGE TO NOTE DATED MARCH 27, 2009, IN THE AMOUNT OF 233,731.00.
IN FAVOR OF RESIDENTIAL FINANCE CORPORATION AND EXECUTED BY RAYMOND MCLAUGHLIN
and NICOLE MCLAUGHLIN

PROPERTY ADDRESS: 36 HEATHER DRIVE, EAST HARTFORD, CT 06118

PAY TO THE ORDER OF ___CitiMortgage, Inc.___

WITHOUT RECOURSE

BY: RESIDENTIAL FINANCE CORPORATION

NAME:

_David K. Stein_
DAVID K STEIN
TITLE: VICE PRESIDENT

Certified to be a true and correct copy of the original instrument.

11833.9          Page 1 of 1

# EXHIBIT B

After Recording Return To:
**RESIDENTIAL   FINANCE
CORPORATION
401 N FRONT STREET
COLUMBUS, OH 43215
(614) 324-4700
ATTN: SHIPPING DEPARTMENT**

Prepared By:
**TONI TOMLINSON
RESIDENTIAL   FINANCE
CORPORATION
401 N FRONT STREET
COLUMBUS, OH 43215
(614) 324-4700**

"Certified True and Exact
Copy of Original Document"

_____CAm_____

[Space Above This Line For Recording Data]

## OPEN-END MORTGAGE

MCLAUGHLIN
Loan #: 0902087373
MIN: 100189300000630306
PIN: 18/114//
Case #: 061-3452925-703

THIS MORTGAGE ("Security Instrument") is given on **MARCH 27, 2009**. The mortgagor is **RAYMOND MCLAUGHLIN & NICOLE MCLAUGHLIN FKA Nicole Creary,** * ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS. **RESIDENTIAL FINANCE CORPORATION,** ("Lender") is organized and existing under the laws of **ILLINOIS, FLORIDA, OHIO, PENNSYLVANIA, WISONSIN, ARIZONA, CALIFORNIA, CONNECTICUT, MARYLAND, MICHIGAN, TEXAS, VIRGINIA, GEORGIA, NEW JERSEY, SOUTH CAROLINA, MASSACHUSETTS, MINNESOTA,** and has an address of **401 N FRONT STREET, COLUMBUS, OH 43215.** Borrower owes Lender the principal sum of **TWO HUNDRED THIRTY THREE THOUSAND SEVEN HUNDRED THIRTY ONE AND 00/100** Dollars (U.S. **$233,731.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **APRIL 1, 2039**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **HARTFORD** County, Connecticut:

                                  See Exhitib A        *HUSBAND & WIFE

which has the address of **36 HEATHER DRIVE, EAST HARTFORD, CT 06118** ("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of

FHA Connecticut Open-End Mortgage - 4/96
367.6                                    Page 1 of 7

0502087373

Certified to be a true and correct copy of the original instrument.

those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS: Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire,

FHA Connecticut Open-End Mortgage - 4/96
367.6                                    Page 2 of 7

C902087373

Certified to be a true and correct copy of the original instrument.

for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may

FHA Connecticut Open-End Mortgage - 4/96

0902087373

Certified to be a true and correct copy of the original instrument.

significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or.

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341 (d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owing all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies

FHA Connecticut Open-End Mortgage - 4/96
367.6                                    Page 4 of 7

0902087373

Certified to be a true and correct copy of the original instrument.

even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceedings. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous

FHA Connecticut Open-End Mortgage - 4/96
⬡ 367.6                                        Page 5 of 7

0902087373

Certified to be a true and correct copy of the original instrument.

substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender of Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment of additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

0902087373

Certified to be a true and correct copy of the original instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider      ☐ Graduated Payment Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ 3·27-09
- BORROWER - RAYMOND MCLAUGHLIN - DATE -

_____ 3.27·09
- BORROWER - NICOLE MCLAUGHLIN - DATE -

Witnesses:

_____      _____
Witness   Conrad M. Williams      Witness   Anja Hoffmann

**STATE OF CONNECTICUT**      ss. East Hartford

**COUNTY OF HARTFORD**

The foregoing instrument was acknowledged before me this MARCH 27, 2009 by RAYMOND MCLAUGHLIN AND NICOLE MCLAUGHLIN, HUSBAND AND WIFE.

ANJA HOFFMANN
*NOTARY PUBLIC*
STATE OF CONNECTICUT
MY COMMISSION EXPIRES OCT. 31, 2013

_____
Notary Public

My Commission Expires: 10·31·13
(Official Seal)

FHA Connecticut Open-End Mortgage - 4/96
⬤ 567.6      Page 7 of 7

**FIRM FILE NO: CT0903-001-MCLAUGHLI**
Date: 03/27/09
Property: 36 Heather Drive, East Hartford, CT 06118
Loan Number: 0902087373
**Parcel Number: 18/114//**

# Exhibit A
Legal Description

A CERTAIN PIECE OR PARCEL OF LAND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON SITUATED IN THE TOWN OF EAST HARTFORD
COUNTY OF HARTFORD STATE OF CONNECTICUT KNOWN AS NUMBER 36
HEATHER DRIVE AND BEING LOT NUMBER 115 ON A MAP WHICH IS FILED AT
THE TOWN CLERK'S OFFICE IN EAST HARTFORD TOWN HALL BOUNDED AND
DESCRIBED AS FOLLOWS:

NORTHERLY: BY LOT 114 ON SAID MAP ONE HUNDRED TWENTYTWO AND
EIGHTYSIX HUNDREDTHS (122.86) FEET.

EASTERLY: BY LAND NOW OR FORMERLY OF HAROLD C SHULTZ SEVENTY
EIGHT (78) FEET.

SOUTHERLY: BY LOT 116 ON SAID MAP ONE HUNDRED TWENTY FOUR AND
FORTY EIGHT ONE HUNDREDTHS (124.48) FEET AND

WESTERLY: BY HEATHER DRIVE, SEVENTY SEVEN (77) FEET.

Certified to be a true and correct copy of the original instrument.

# EXHIBIT "C"

Facts

12)     CitiMortgage admits that on or about March 27, 2009, Plaintiff and Nicole McLaughlin (collectively "the Borrowers") executed a certain *Open End Mortgage* (the "*Mortgage*") in favor of Residential Finance Corporation ("Residential"). CitiMortgage further admits that the *Mortgage* secured a loan from Residential to the Borrowers in the principal amount of Two Hundred Thirty Three Thousand Seven Hundred Thirty One Dollars ($233,731.00). CitiMortgage is without sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations of paragraph 12 of the *Complaint*.

13)     To the extent that paragraph 13 of the *Complaint* alleges that the note representing the Borrower's indebtedness to Residential (the "*Note*") was obtained through coercion or fraud, CitiMortgage denies such allegation.   CitiMortgage is without sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations of paragraph 13 of the *Complaint*.

14)     CitiMortgage denies that portion of paragraph 14 that states that Residential sold the *Note* without the authority of the Plaintiff. CitiMortgage is without sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations of paragraph 14 of the *Complaint*.

15)     CitiMortgage denies that portion of paragraph 15 that states: "the now demanded balance of $233,731.00 of [the] alleged mortgage was paid in full." CitiMortgage is without sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations of paragraph 15 of the *Complaint*.

- 3 -

## COUNTERCLAIM

Pursuant to *Fed. R. Civ. P.* 13(a), CitiMortgage, Inc., through its undersigned counsel, hereby asserts the following counterclaim against Raymond McLaughlin and counterclaim defendant Nicole McLaughlin.

### I.    Jurisdiction and Venue

1)    Jurisdiction and venue with respect to this counterclaim are proper to the extent that this is a compulsory counterclaim pursuant to *Fed. R. Civ. P.* 13(a) arising out of the transaction or occurrence that is the subject matter of Raymond McLaughlin's claim(s) in this matter and not requiring the presence of third parties over whom the court cannot acquire jurisdiction. Jurisdiction over the claims asserted herein is also proper pursuant to 28 *U.S.C.* § 1367.

### II.    First Count (Breach of Contract)

2)    The counterclaim plaintiff, CitiMortgage, Inc. ("CitiMortgage"), is a Delaware corporation with a place of business at 1000 Technology Drive, O'Fallon, Missouri 63368-2240.

3)    The counterclaim defendant, Raymond McLaughlin, is an individual who resides at 36 Heather Drive, East Hartford, Connecticut 06118.

4)    The counterclaim defendant, Nicole McLaughlin, is an individual who, upon information and belief, resides at 36 Heather Drive, East Hartford, Connecticut 06118.

5)    On or about March 27, 2009, Raymond McLaughlin and Nicole McLaughlin (collectively "the Borrowers") became indebted to Residential Finance Corporation ("Residential") in the principal amount of Two Hundred Thirty Three Thousand Seven Hundred Thirty One Dollars ($233,731.00) (the "Loan"). The Loan is evidenced by a certain *Note*, dated

- 10 -

March 27, 2009, by and between the Borrowers and Residential in the original principal amount of Two Hundred Thirty Three Thousand Seven Hundred Thirty One Dollars ($233,731.00), payable with interest thereon (the "*Note*"). A copy of the *Note* is attached hereto as **Exhibit A** and incorporated herein by reference.

6)      As security for the payment and satisfaction of the Loan, the Borrowers executed and delivered to Residential a certain *Open End Mortgage*, dated March 27, 2009 (the "*Mortgage*"), by which the Borrowers granted to Residential a mortgage encumbering the Borrowers' interest in the property known as 36 Heather Drive, East Hartford, Connecticut 06118 (the "Property"). The *Mortgage* was recorded at Page 234 of Volume 3086 of the East Hartford, Connecticut Land Records. A copy of the *Mortgage* is attached hereto as **Exhibit B** and incorporated herein by reference.

7)      On or about May 1, 2009, Residential assigned, sold or otherwise transferred its rights under the *Note* and the *Mortgage* to CitiMortgage.

8)      On or about May 1, 2009, the Borrowers were provided with written notice (the "*Notice*") of the assignment, sale and/or transfer of Residential's rights under the *Note* and *Mortgage* to CitiMortgage. A true and accurate copy of the *Notice* is attached hereto as **Exhibit C**.

9)      CitiMortgage is the current owner and holder of the *Note* and the *Mortgage*.

10)      The Borrowers are in default of their obligations to CitiMortgage under the *Note* and the *Mortgage*. Particularly, but not by way of any limitation, the Borrowers have failed and continue to fail to timely and fully pay the amounts due under the *Note* and *Mortgage*.

- 11 -

11)     As of January 25, 2010, the amounts presently due and owing under the *Note* and *Mortgage* were Two Hundred Forty Three Thousand Twenty Five and 99/100 Dollars ($243,025.99) in principal and interest, exclusive of late fees, penalties, default interest and attorneys' fees, all of which are also recoverable under the *Note* and *Mortgage*.

12)     As a result of the aforementioned breaches of contract, CitiMortgage has incurred and will continue to incur damage, which damage includes but is not limited to amounts due and owing under the *Note* and *Mortgage*.

**III.     Second Count (Foreclosure)**

2-11.   CitiMortgage hereby incorporates by reference paragraphs 2 through 11 of the First Count as paragraphs 2 through 11 of the Second Count as if said paragraphs were more fully set forth herein.

12)     CitiMortgage has exercised the option to declare the entire balance due on the *Note* and *Mortgage*.

13)     Upon information and belief and except as hereinafter alleged, there are no valid encumbrances of record with respect to the Property that are subsequent in right to the *Mortgage* herein being foreclosed.

14)     The Borrowers are the record owners of the Property and, therefore, may claim an interest in the Property that is subsequent in right to the *Mortgage*.

15)     Upon information and belief, the Property is a residential property. The rights of any tenants or any person claiming any right of occupancy in the Property are also subsequent in right to the *Mortgage*.

HFD 207231.1

Note, ¶ 2; *id.*, Allonge to Note. Therefore, in accordance with Conn. Gen. Stat. § 42a-3-104, CitiMortgage is entitled to treat the Note as either.

Plaintiffs argue that CitiMortgage may not enforce the Note as a promissory note because it was already used as a draft. *Objection*, p. 15. The Note does not, however, evidence an instruction from either Raymond McLaughlin or Nicole McLaughlin to pay Residential. Instead, the plain language of the Note sets forth a ***promise*** by Raymond McLaughlin and Nicole McLaughlin to pay their debt ***to the order*** of CitiMortgage (as the assignee of Residential). payment itself: "Borrower promises to pay the principal sum of [$233,731.00], plus interest, to the order of Lender." *Id.*, ¶ 2; *id.*, Allonge to Note. Thus, Plaintiffs' construction of the Note as a draft is erroneous and contrary to the Note's plain meaning.

Regardless, none of Plaintiff's postulations regarding the nature of the Note or its construction under the UCC amount to a cognizable claim against CitiMortgage because the UCC, as codified in Chapter 42a of the Connecticut General Statutes, does not create an affirmative right of action to negate a negotiable instrument. *See Florian v. Lenge*, 91 Conn.App. 268, 278 (2005) ("To prevail in an action to enforce a negotiable instrument, the plaintiff must be a holder of the instrument or a nonholder with the rights of a holder.... Only a holder in due course may enforce a negotiable instrument....").

Lastly, in the *Objection*, Plaintiffs aver – for the first time – that the "DRAFT" was altered in violation of Conn. Gen. Stat. § 42a-3-407. *Objection*, p. 11. Nowhere in the *Complaint*, however, do Plaintiffs make any such allegation. Therefore, Plaintiffs' argument that the Note was improperly altered does not warrant consideration's with respect to Defendant's

- 6 -

C.     **Count Five Does Not State A Viable Cause Of Action Pursuant To The UCC**

Count Five of the *Complaint* appears to assert defenses to CitiMortgage's foreclosure claim rather than an affirmative cause of action for violation of the UCC.  *See generally Complaint*, Count Five; *see also* Conn. Gen. Stat. § 42a-3-305 (setting forth defenses to an action to enforce a negotiable instrument).  Nevertheless, Plaintiffs argue that CitiMortgage violated either Article 3 or Article 9 (or both) of the UCC.  *Objection*, pp. 11-15.

Plaintiffs maintain – without citing any authority – that Article 9 applies to mortgages. *Id.*, p. 11.   Comment 1 to Conn. Gen. Stat. § 42a-9-101 states that Article 9 "provides a comprehensive scheme for the regulation of security interests in ***personal property and fixtures***."  Conn. Gen. Stat. Ann. § 42a-9-101 cmt. 1 (emphasis added).  The *Complaint* alleges that the security interest at issue in the case *sub judice* pertains to the real property located at 36 Heather Drive, East Hartford, Connecticut.  *Id.*, Relief Sought ¶ 5.  There is no personal property or fixture at issue in this case.  Accordingly, UCC Article 9 is inapplicable.

"A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies."  *Emigrant Mortg., Co., Inc. v. D'Agostino*, 94 Conn.App. 793, 799 (2006) (internal citation and quotation omitted).  Here, the plain language of the Note evidences a "promise[]" by Raymond McLaughlin and Nicole McLaughlin to pay "the principal sum of [$233,731.00]."  Note, ¶ 2.  Thus, the Note may be construed as a note.  Conn. Gen. Stat. § 42a-3-104(e).  The Note may also be construed as a "draft" because it orders Raymond McLaughlin and Nicole McLaughlin to perform their promise to pay by submitting payment to CitiMortgage (as assignee of Residential Finance Corporation).  Conn. Gen. Stat. § 42a-3-104(e);

- 5 -

attorneys' representatives or agents in anticipation of litigation or for trial, and any materials containing or reflecting mental impressions, conclusions, opinions, and/or legal theories, or the basis thereof, of any attorneys for Defendant, or any other applicable privileges.

C.      Defendant, in making its initial disclosures, does not waive any objections based on relevance, materiality, competence, privilege, immunity from disclosure, or other grounds as specified above.

D.      Defendant reserves objections to provision of information that is not reasonably calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome.

**II.     Initial Disclosures**

> **A.     The Following Individuals Are Likely to Have Discoverable Information That Defendant May Use to Support Its Claims and Defenses.**

1.      Raymond McLaughlin.  36 Heather Drive, Hartford, Connecticut 06118.

Subjects: Execution of promissory note and mortgage.

2.      Nicole McLaughlin.  36 Heather Drive, Hartford, Connecticut 06118.

Subjects: Execution of promissory note and mortgage.

Defendant may also disclose additional witnesses that it identifies through discovery or its own investigation.  Defendant reserves its right to call at trial witnesses that are not listed in this Rule 26 disclosure statement.  Defendant also reserves its right to supplement this Rule 26 disclosure statement as may be appropriate.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAYMOND MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:09-cv-01762 (MRK) |
| v. | ) | |
| | ) | |
| CITIMORTGAGE, INC. | ) | |
| Defendant. | ) | MARCH 5, 2010 |

## CITIMORTGAGE INC.'S MOTION TO JOIN NICOLE MCLAUGHLIN AS AN INVOLUNTARY COUNTERCLAIM DEFENDANT

Pursuant to *Fed. R. Civ. P.* 19, defendant CitiMortgage, Inc. ("CitiMortgage"), through its undersigned counsel, requests that the Court order that Nicole McLaughlin, be added as an involuntary counterclaim defendant in this action. In support of this motion, CitiMortgage states as follows:

1.     Plaintiff Raymond McLaughlin ("Plaintiff") filed a complaint ("*Complaint*") against CitiMortgage alleging, *inter alia*, violation of the *Racketeer Influence and Corrupt Organizations Act* ("RICO") in connection with CitiMortgage's alleged attempt(s) to collect an unlawful debt from Plaintiff.

2.     The contracts at issue in the case *sub judice* are a certain note dated March 27, 2009, by and between Raymond McLaughlin and Nicole McLaughlin (the "Borrowers") and Residential Finance Corporation in the original principal amount of Two Hundred Thirty Three Thousand Seven Hundred Thirty One Dollars ($233,731.00), payable with interest thereon (the "*Note*") and a certain *Open End Mortgage* (the "*Mortgage*") encumbering the Borrowers' interest in the property known as 36 Heather Drive, East Hartford, Connecticut 06118 (the "*Mortgage*")

HFD 207250.1

F. Supp. 877, 879 (D. Conn. 1986) (*citing Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) ("Failure to plead fraud with particularity justifies dismissing the complaint.").

"The essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Weisman v. Kaspar*, 661 A.2d 530, 533 (Conn. 1995).  In order to satisfy Rule 9 (b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) (internal citations and quotations omitted); *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998).

In Count Two of the *Complaint*, Plaintiff alleges that CitiMortgage "fraudulently induced" Plaintiff to execute the Note by misrepresenting that it was lending money "when in fact nothing was lent." ¶ 2.[5]  One problem with this allegation is that Plaintiff admits earlier in the *Complaint* that he executed the Note in favor of *Residential* on or about March 27, 2009. *Complaint*, Facts ¶ 9.  CitiMortgage did not enter the picture until *after* the Note had been executed. *Id.*, ¶ 13.  Accordingly, any alleged misrepresentations were made by *Residential* and cannot be attributed to *CitiMortgage* for the purpose of stating a fraud claim. *See Flemming v. Goodwill Mortg. Services, LLC*, 648 F.Supp.2d 292, 296 (D. Conn. 2009).  Another problem is that Plaintiff fails to allege that he relied to his own detriment on CitiMortgage's purported

---

[5] To the extent that Plaintiff asserts that CitiMortgage's purported representation to the public that it was a "Lender" was fraudulent, *see Complaint*, Count Two, ¶ 2, such allegation is insufficient to state a fraud claim because Plaintiff did not – and cannot – allege that he relied on any statements CitiMortgage made to a third party to his own detriment. *See Retrofit Partners I, L.P. v. Lucas Industries, Inc.*, 201 F.3d 155, 162 (2d Cir. 2000).

HFD 206711.4

Further, Plaintiff fails to allege any particular disclosure with which he was not provided or any manner in which the Disclosure Statement or the Receipt of Notice is facially defective. Accordingly, Plaintiff is not entitled to take advantage of TILA's extended three-year right of rescission, because he received the requisite disclosures and notice of right to cancel. *See also Kamara*, 654 F.Supp.2d 259, 264 (E.D. Pa. 2009). Moreover, even if Plaintiff chose not to read the documents at the closing, it does not change the fact that he acknowledged that he received all of the proper notices on March 27, 2009. *See McCutcheon v. America's Servicing Company*, 560 F.3d 143, 150 (3rd Cir. 2009) (finding delivery of required disclosures at closing to be unaffected by borrower's failure to read the documents). Therefore, Count Three is legally deficient and should be dismissed.

**E.      Count Five Fails To State A Claim For Violation Of The Uniform Commercial Code.**

Count Five of the *Complaint* avers that CitiMortgage violated several provisions of the Uniform Commercial Code ("UCC"), which is codified in chapter 42a of Connecticut's General Statutes.    In actuality, however, it appears that Plaintiff is attempting to raise defenses to CitiMortgage's action to enforce its rights under the Note via the counterclaim filed against Plaintiff on January 27, 2010 [D.E. 39].[7]  *See Complaint*, Count Three ¶¶ 1-3. Accordingly, CitiMortgage submits that Count Five fails to state a cognizable claim under the UCC. To the extent the Court construes Count Three as asserting a UCC violation against CitiMortgage, Defendant submits that such claim fails for the following reasons.

---

[7]  Similarly, Count Eight appears to be Plaintiff's attempt at raising a defense to Defendant's counterclaim. CitiMortgage does not believe that Plaintiff's averments that there is no contract amount to a cognizable claim. *See Complaint*, Count Eight ¶ 1. Further, neither 18 U.S.C. §§ 242 or 1583 provide a private right of action. *Dugar v. Coughlin*, 613 F. Supp. 849, 852 (D.C.N.Y. 1985) and *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996). Accordingly, CitiMortgage submits that Count Eight fails to state a claim and should be dismissed.

- 11 -

15 U.S.C. § 1681t(b)(1)(F).[13]

In *Ryder v. Washington Mut. Bank, FA*, 371 F.Supp.2d 152 (D. Conn. 2005), this Court held that state law claims are preempted by Section 1681t(b)(1)(F) where the furnisher of information takes action after it has received notice of inaccuracies. *Id.* at 154. Here, like the plaintiff in *Ryder*, Plaintiff's defamation claim is preempted because Plaintiff alleges that CitiMortgage "slanderously reported" that the Mortgage was delinquent to TransUnion, Equifax and Experian *only after* it received notice of the purported rescission of the Note and Mortgage. *See Complaint*, Facts ¶¶ 18, 21.   Moreover, even assuming *arguendo* that the preemption exception set for in Section 1681h(e) applied, Plaintiff's conclusory allegation that CitiMortgage acted with malice is insufficient to state a claim for defamation.   *See Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F.Supp.2d 283, 299 (N.D.N.Y. 2008).   Thus, Plaintiff's defamation claim is preempted by FCRA and should, therefore, be dismissed.

---

[13] Importantly, this preemption occurs *whether or not Plaintiff has otherwise stated a valid FCRA cause of action.*   As 15 *U.S.C.* § 1681t(b)(1)(F) makes clear, FCRA preempts any "requirement or prohibition . . . imposed under the laws of any State . . . with respect to any subject matter regulated under . . . [S]ection 1681s-2 . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." Importantly, because Section 1681t(b)(1)(F) applies to preempt any law that relates to "*any* subject matter regulated under . . . [S]ection 1681s-2 (emphasis added)," FCRA's preemptive force applies to **both** Section 1681s-2(a) and Section 1681s-2(b).

HFD 206711.4

As a preliminary matter, Article 9 of the UCC is not applicable to real estate mortgages. *State Nat. Bank of Connecticut v. Dick*, 325 A.2d 235, 239 (Conn. 1973). Accordingly, CitiMortgage's action to foreclose the Mortgage cannot form the basis of a claim for a UCC violation by Plaintiff. Further, and although CitiMortgage believes that Plaintiff's characterization of the Note is irrelevant to whether Count Five states an actionable claim, CitiMortgage will briefly address the points raised by Plaintiff. Plaintiff avers that a document in "Exhibit A" to Defendant's counterclaim [D.E. 39] is an order rather than a promissory note within the meaning of UCC § 9-102.[8] Article 9 defines a "promissory note" as:

> an instrument that evidences a promise to pay a monetary obligation, does not evidence an order to pay and does not contain an acknowledgment by a bank that the bank has received for deposit a sum of money or funds.

*Id.* Here, the Note plainly evidences a promise by Plaintiff (and Nicole McLaughlin) to pay "the principal sum of [$233,731.00]."[9] On the other hand, the allegations in Count Three seem to aver that the Note is actually a draft by virtue of it being an order. *Complaint*, Count Three ¶ 3. Regardless, where an instrument "falls within the definition of both 'note' and 'draft', a person entitled to enforce the instrument may treat it as either." Conn. Gen. Stat. § 42a-3-104. Accordingly, CitiMortgage may treat the Note as a "note" regardless of whether it is a "draft." *Id.* Thus, the allegation that CitiMortgage cannot treat the Note as a "note," *see Complaint*, Count Three ¶ 2, is without merit.

---

[8] To reiterate, Article 9 of the UCC does not apply to mortgages. *State Nat. Bank of Connecticut*, 325 A.2d at 239. Further, Article 3 not Article 9 governs promissory notes. *See Wells Fargo Bank, N.A. v. Murphy*, 2008 WL 5491954, at *2 (Conn. Super. 2008) (attached hereto as **Exhibit E**).

[9] A true and accurate copy of the Note is attached hereto as **Exhibit F**.

- 12 -